# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE *ex rel.* William S. Mack,

*v.*

THE BOARD OF EDUCATION OF AURORA.

*Opinion filed October 24, 1893.*

1. SCHOOLS—*power of boards of education in districts of over 1000 inhabitants to change text books.* Clause 9 of section 26, article 5, of the School law of 1889, (Laws of 1889, p. 297,) providing that school directors shall not permit text books to be changed oftener than once in four years, applies to boards of education in school districts having not less than 1000 nor more than 100,000 inhabitants.

2. SAME—*writing-books are text books for penmanship instruction.* Graded writing or copy-books, with printed forms and texts scientifically arranged, with printed instructions to each pupil in each book and with a manual of instruction for the teachers, are text books for penmanship instruction, within the meaning of the act prohibiting change of text books oftener than once in four years.

ORIGINAL petition for *mandamus.*

This was a proceeding by *mandamus* in this court, the petition being filed in the name of the People of the State of Illinois, on the relation of William S. Mack, against the board of education of school district No. 5, township 38,

north, range 8, east of the third principal meridian, in
Aurora, Illinois, to prohibit the use and introduction in
any of the public schools of said district of books for
the Sheldon system of writing for a period of four years
from June, 1895, and to prohibit for such period the in-
troduction or use in such schools of any other books for
the vertical system of writing than books for the system
known as "Merrill's Vertical Penmanship."

The petition shows that said district No. 5 has more
than 1000 and less than 100,000 inhabitants, to-wit, more
than 13,000 inhabitants, is organized under the general
school laws of the State of Illinois, and has a board of
education; that the relator is a citizen, voter and tax-
payer of the said school district, and has had children of
school age attending the public schools thereof for more
than five years last past; that said board of education
has been duly and regularly constituted according to
law, and has heretofore adopted certain rules and regu-
lations for the government and control of the schools,
and has had in force a rule requiring all adoptions of
text books and all changes in the same to be acted upon
at the regular meeting in June for the ensuing school
year, which said rule has been in force for more than
three years last past; that penmanship is one of the
branches which is now and always has been taught in
all the public schools of said district; that prior to June
19, 1895, a system of penmanship, known as the "slanting"
system, was taught in the public schools of said district;
that at the regular June meeting, in 1895, of said board
of education the said board voted to adopt a "vertical"
system of penmanship in the said schools, and adopted
books for teaching in said schools the system known as
"Merrill's Vertical Penmanship," and that accordingly
said books of the Merrill system were generally adopted
as the text books for the teaching of the so-called sys-
tem of vertical penmanship; that at a meeting of the
said board of education held on October 4, 1897, the said

board of education voted to adopt other books for the teaching of said vertical system of penmanship, known as "Sheldon's New Vertical Series Writing-Books," and that accordingly said board of education proceeded to cause the said books of the said "Merrill's Vertical Penmanship" to be replaced and supplanted in said schools by the said "Sheldon's New Vertical Series Writing-Books;" that the conditions of the sale, publication and supply of the books of the said "Merrill's Vertical Penmanship" are in all respects the same as at the time of such adoption, and have continued to be the same from said time until the present time; that by the adoption of the books known as "Merrill's Vertical Penmanship" the same became, and were under the statute, legally adopted for the period of four years, during which time they could not be lawfully supplanted by any other books for teaching the same system of penmanship, and that under the statute it was and is the duty of the said board of education to prevent any such change; that said board of education has refused, and still refuses, to prohibit the introduction and use in the public schools under its control, of the said Sheldon system of writing text books. Said petition prays for a writ of *mandamus* to forthwith prohibit the further use and introduction in any of the public schools of said district of the said Sheldon system of writing text books for a period of four years after the 19th day of June, 1895, etc.

The answer of the board of education admits that William S. Mack is a resident, citizen, voter and taxpayer of said school district, and is the head of a family and has children of school age attending the public schools of said school district; admits that the school district contains more than 1000 inhabitants; that said board of education has been duly and regularly constituted and organized according to law, and has heretofore adopted certain rules and regulations for the government and control of the schools within its jurisdiction, among

which said rules and regulations is the following: "All adoptions of text books, and all changes in same, shall be acted upon at the regular meeting in June for the ensuing school year," but avers that, notwithstanding said rule and regulation, the said board of education had a right to change said rule at any time by a majority vote of said board. Defendant further states that said board of education has heretofore adopted certain other rules and regulations for the government and control of the said schools, to-wit, the following rule: "To adopt or change a text book a majority vote of the whole board shall be required,"—which said rule has been in force and binding upon said board of education for more than three years last past; admits that penmanship is one of the branches which is now and always has been taught in all the public schools of said district No. 5, and that prior to the 19th day of June, 1895, the "slanting" system of penmanship was generally taught, and that said board adopted "Merrill's Vertical Penmanship," but it denies said books are text books; admits the board adopted said "Merrill's Vertical Penmanship," as set forth in the petition of the relator; avers that said "Merrill's Vertical Penmanship" books are not such books as come within the purview of the statutes of this State regulating the use and change of text books, and that the statutes of this State and the rules and regulations of said board defining and limiting the action of boards of education upon the adoption and change of text books do not apply to the copy-books of the "Merrill's Vertical Penmanship" series, nor to other books of that kind or nature; avers the said board of education can supplant or change said writing-books, or any writing-books that may at any time be in use in any of said public schools, whenever it so desires, by a majority vote of said board, and in so doing avers that said board of education will not be guilty of any violation of any statute of this State nor any rule or regulation of said board; denies that said "Merrill's

Vertical Penmanship" system became and was the legally adopted system of text books of penmanship for the period of four years from and after its adoption, or for any specified time or period, but only for such a period as the said board should designate or until the further action of said board; denies that during the said period of four years it became and was illegal for said board to adopt and use, or permit to be adopted and used, any other books for the teaching of such vertical system of penmanship, but avers that said board could adopt at any time any other books for the teaching of penmanship by a majority vote of said board; avers that the statute of this State defining and limiting boards of education in districts of 1000 and not over 100,000 inhabitants nowhere provides that such boards of education shall be restrained or prohibited from adopting or changing text books within four years, but that the only law in this State placing a limitation upon the adoption and change of text books is found in the statute governing boards of directors in districts having a population of less than 1000, and does not apply to the board of education in this case; admits that said Merrill books were uniformly used for the period of two years, until they were replaced at the beginning of the present school year; admits that said board, at a regular meeting held on the 4th day of October, 1897, voted to adopt "Sheldon's New Vertical Series Writing-Books," as set forth in the petition of relator; admits that said board is about, in all the public schools under its direction and control, to introduce and use the said "Sheldon's New Vertical Series Writing-Books," and denies that said acts of said board are contrary to the statute; admits that said board has refused, and still does refuse, to prohibit the introduction of the Sheldon system, and asks to be dismissed with its costs. To this answer the petitioner demurred.

ALSCHULER & MURPHY, for relator.

HANCHETT & PLAIN, and M. O. SOUTHWORTH, for respondent.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The principal question presented by the petition, answer and demurrer is, does the statute prohibiting the change of text books oftener than once in four years apply to boards of education in school districts having more than 1000 inhabitants?

Section 26 of article 5 of the School law, (Hurd's Stat. 1889, p. 1235,) which article defines the duties of boards of directors, is as follows: "It shall be the duty of the board of directors of each district—  *  *  *  Ninth—The directors shall direct what branches of study shall be taught and what text books and apparatus shall be used in the several schools, and strictly enforce uniformity of text books therein, but shall not permit text books to be changed oftener than once in four years, but shall prohibit such change." Respondent contends that this section applies only to boards of directors of schools, and not to boards of education. In determining this question it will be necessary to consider this section in connection with that portion of the School act relating to boards of education.

Section 1 of article 6 of the School law, which article is entitled "Board of Education," is as follows: "Incorporated cities and villages, except such as now have charge and control of free schools by special acts, shall be and remain parts of the school townships in which they are respectively situated, and be subject to the general provisions of the School law, except as otherwise provided in this article." The foregoing, being the first section of the article relating to boards of education, must be regarded as applying to boards of education, and by the express terms of the statute boards of education are thus made *subject to the general provisions of the School law*, except as otherwise provided in article 6. Unless there is some

provision in article 6 superseding it, or showing an intent on the part of the legislature to exempt boards of education from the operation of the provisions of this statute restricting the change of text books oftener than once in four years, it must be held applicable to boards of education.

On examining section 10 of article 6, which provides that "the board of education shall have all the powers of the school directors, and in addition thereto and inclusive thereof they shall have the power and it shall be their duty," (enumerating eighteen additional powers and duties,) and comparing it with section 26 of article 5, which enumerates the duties of school directors, we are forced to the conclusion that it was the evident intent of the legislature to make the duties and powers of school directors applicable to boards of education like respondent, otherwise boards of education would be without some essential powers which are enumerated only in those portions of the School act pertaining to the duties and powers of school directors. Many powers legally exercised by boards of education are found only in that part of the School law concerning school directors. The provision that teachers shall not be paid until they have kept and furnished schedules required by the School act, and shall have satisfactorily accounted for books, apparatus and other property of the district that they may have taken in charge; the provision requiring teachers to be paid monthly; the power to decide when the school house site or the school buildings have become unnecessary or unsuitable or inconvenient for a school; the power of eminent domain, and many other provisions which it is unnecessary to mention, are found only in the article of the School law relating to directors. Section 27, which clothes directors with additional powers, giving them, among others, the power to borrow money and to issue bonds for building school houses, purchasing sites, repairing and improving school houses, appears to be the

only authority by which boards of education can exercise this important power.

The ninth clause of section 26 of article 5 is the only provision in the School law which confers the power or duty to specifically direct what *branches of study shall be taught and what text books or apparatus shall be used in the several schools,* prescribing *uniformity of text books* but limiting the right to change text books oftener than once in four years. The only special provision in article 6, relating to boards of education, upon this subject, is the following, found in the tenth clause of section 10: "To prescribe the method and course of discipline and instruction in the respective schools, and to see that they are maintained and pursued in the proper manner." This provision is not as comprehensive as the provision empowering boards of directors to direct what branches of study shall be taught and what text books and apparatus shall be used in the several schools, and was not, in our opinion, intended to supersede the ninth clause of section 26 of article 5. Another reason for the view that the legislature did not intend this is found in the fact that in the general revision of the School law in 1889, in that portion of article 6 applying to cities of over 100,000, (Laws of 1889, p. 308,) the ninth clause of section 23 is precisely like the tenth clause in question, viz., "to prescribe the method and course of discipline and instruction in the respective schools, and to see that they are maintained and pursued in proper manner." Then follows the tenth clause in this section relating to powers of boards of education in cities of over 100,000. The legislature thought it necessary to provide therein, "to prescribe what studies shall be taught and what books and apparatus shall be used," which tenth clause is almost identical with the ninth clause of section 26 of article 5. The power granted to boards in the larger cities by the ninth clause was evidently not regarded as sufficient to give boards of education power *in regard to the*

*school books and apparatus to be used*, consequently the power was given the board by the tenth clause. If it was necessary in the case of larger cities to prescribe the powers and duties of boards of education *in regard to school books and apparatus*, it would seem necessary in the case of boards like the case at bar.

Boards of education derive this power because it is primarily conferred upon boards of directors, and by the general provision upon boards of education. This being true, boards of education must be also subject to the restrictions imposed by the statute. The reason for prohibiting the change of text books oftener than once in four years undoubtedly was to save expense to parents of small means. Besides, it was regarded as detrimental to the pupils to change their text books too frequently. If necessary to limit changes in districts under school directors we believe the reason holds equally good in cities and villages in districts under boards of education. We therefore hold that the statute prohibiting the change of text books oftener than once in four years must be held to apply to boards of education in school districts having more than 1000 inhabitants.

The case of *Kuenster* v. *Board of Education*, 134 Ill. 165, cited by respondent, is not in conflict with the views expressed in this case, the court holding in that case that the statute having conferred the power and duty in respect to examining teachers and fixing their salaries, upon the board of education, it superseded the power and duties of the school superintendent.

Are the books in question text books, within the meaning of the statute? The petition describes the books in question as "a system of text books consisting of twelve graded writing or copy-books, with printed forms and texts, scientifically arranged, with printed instructions to the pupil in each book and with a manual of instruction for the teachers." This description is not denied in the answer of respondent, but it denies they are text

books. Penmanship is "one of the branches of education" required to be taught in the public schools. A teacher, to receive a certificate, must, upon due examination, be found qualified to teach penmanship. (Hurd's Stat. 1889, sec. 3, p. 1243.) In determining whether the books are text books, within the meaning of the law, it will be necessary to inquire what text books are. Webster defines a text book as "a book or manual used in teaching; a book for students, containing the principles of a science or any branch of learning." Stormonth's Pronouncing Dictionary defines a text book to be "a book to be used as a standard book for a particular branch of study, for the use of students." The books here in question come within the definition given by Webster. They are books used in teaching penmanship. Text books must be considered with reference to the particular branch of study for which they are designed. Rules for instruction in penmanship are necessarily simple. The books described in the petition as "twelve graded writing or copy-books, with printed forms and texts, scientifically arranged, with printed instructions to the pupil in each book and with a manual of instruction for the teachers," must be regarded as text books for penmanship. Text books for instruction in arithmetic; or Greek or Latin, are books of a very different character, but still are text books applicable to the particular branch of study for which the author designed them. These books being for the teaching of penmanship, meet, in our judgment, the requirements of a text book.

We are of opinion that a peremptory *mandamus* should issue, as prayed for in the petition of the relator, and it is therefore ordered.    *Mandamus awarded.*