Wave Elder, Plaintiff-Appellee, v. Board of Education of School District Number 127½, Cook County, Illinois, Defendant-Appellant.

Gen. No. 49,758.

First District, Third Division.

June 3, 1965.

Klein and Thorpe, of Chicago (Franklin W. Klein and Newell N. Jenkins, of counsel), for appellant.

Rugen, Ligtenberg & Goebel, of Chicago (John Ligtenberg, of counsel), for apellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment of the circuit court holding null and void the proceedings of the defendant, Board of Education, dismissing the plain-

tiff. The order further required that the plaintiff be reinstated as a teacher.

The plaintiff claims she had acquired tenure status under Article 24 of The School Code (Ill Rev Stats 1961, c 122, pars 24–1 to 24–23) at the time she was dismissed, and she was entitled to a hearing as provided by the Code in the case of teachers who are on tenure. The defendant contends that plaintiff had not acquired tenure status, and that the provisions of The School Code relating to tenure teachers are not applicable to the plaintiff.

The questions raised on this appeal are whether a school board has the right to adopt a regulation defining temporary incapacity on the part of a teacher, and further providing that the teacher's contract will be terminated in the event of absence from work extending beyond the specified period of temporary incapacity. Also, whether a superintendent of schools has authority to waive the rights of a school board relating to a teacher's probationary period.

Plaintiff was a teacher in defendant's school district during the school year September, 1960 to June, 1961 under a one year contract. At the end of the first year of teaching the plaintiff entered into a second one year contract with the defendant for the school year September, 1961 to June, 1962. Plaintiff taught school from September, 1961 to December 19, 1961 under her second contract. On December 19, 1961 plaintiff suffered an injury and did not teach for the remainder of the school year ending in June, 1962. She testified, however, that she "was able to go back to school and wanted to go back."

The plaintiff testified that in the spring of 1962 she had a conversation with the Superintendent of the defendant in which she told him that she wanted to go back to teaching. She also testified that the Assistant Principal was present at that conversation. Her tes-

timony further was to the effect that neither the Superintendent nor the Assistant Principal said anything to the effect that the defendant would rely on its three-months rule relating to temporary illness and temporary incapacity, or that they would recommend to the board that it do so.

The plaintiff further testified that Elden D. Finley, Superintendent of the defendant, told her, in the presence of the Assistant Principal, that she should remain home the rest of the year and that very shortly a new contract would be sent out for the new year and that she would be on tenure, and that remaining home would not in any way affect her job. Soon after that conversation she received a contract covering the period from September, 1962 to June, 1963.

The Superintendent of the defendant's school district testified that he had no recollection of any such conversation.

The regulations of the school board, adopted April 10, 1956, provide as follows:

"Section 40: (TEMPORARY ILLNESS AND TEMPORARY INCAPACITY) The contractual continued service status of a superintendent, principal or teacher shall not be affected by absence caused by temporary illness or temporary incapacity.

"Temporary illness and temporary incapacity are hereby defined as follows: Any Superintendent, principal or teacher who, because of ill health, or for any other reason, is physically or mentally unfit to perform his or her duties, and by reason thereof is continuously absent from his or her duties for a period of less than three (3) school months shall be considered temporarily ill or temporarily incapacitated. If, however, absence of duty continues for three months, his or her con-

tract terminates at the end of said three months, without any action by the Board of Education and without any notice to any such superintendent, principal or teacher.

. . . . . .

"Section 43: (TERMINATION OF EMPLOYMENT) The employment of, contractual continued service status of, and all contracts of employment with superintendents, principals and teachers is subject to the State of Illinois (sic) now or hereafter in force, and may be terminated by any superintendent, principal or teacher, or by the Board, in the manner provided by law, or by the Board in the event that the Teachers or Supervisory certificate of any such superintendent, principal or teacher shall be revoked according to law, or because of the failure of any such superintendent, principal or teacher to conform to and comply with any lawful rules, regulations or orders heretofore or hereafter adopted or amended by the Board, and during the probationary period of such superintendent, principal or teacher, either party may terminate the employment and contract at any time, upon giving thirty (30) days written notice of such termination or dismissal, no superintendent, principal or teacher shall be entitled to any further compensation."

The testimony does not establish whether or not the conversation testified to by the plaintiff with the school superintendent took place within three months of the date of plaintiff's injury. The plaintiff said she thought it was in the early part of April or perhaps in the latter part of March, 1962; the superintendent testified that he and the assistant principal had a conversation with the plaintiff in the latter part of March. Neither witness was able to give the exact

date of the conversation. If it was at any time after March 19, 1962, it would have been more than three months, inasmuch as the injury occurred on December 19, 1961.

By letter dated March 28, 1963 the plaintiff was notified that it was the unanimous decision of the board to terminate her contract as a teacher at the close of the present school year. The letter set forth the reasons for the action and that the notice of termination was given her in accordance with section 11 of Article 24 of the 1961 School Code of Illinois (Ill Rev Stats 1961, c 122, par 24–11). The plaintiff by letter dated April 5, 1963 demanded a public hearing and on April 10, 1963, the defendants, through its superintendent, advised the plaintiff by letter that her request for a public hearing had been denied by the Board of Education, because under the law a Board of Education is not required to hold a public hearing for a teacher who is not on tenure. She was further advised in that letter that in order to be on tenure she must have been employed as a full-time teacher for a probationary period of two (2) consecutive school terms, and since she was absent from duty for approximately five months in the previous year she did not have two (2) full-time consecutive school terms to her credit.

Each of the employment contracts entered into by the plaintiff contained a provision that the teacher shall conform to, comply with, and be subject to all lawful rules, regulations and orders heretofore or hereafter adopted by the board and any amendments thereto.

The facts further show that the defendant did not at any time grant a leave of absence to the plaintiff. There is no communication in the school board's files and nothing contained in any minutes of the school board relative to plaintiff's illness.

The statutes to be considered are the following:
Ill Rev Stats 1961, chap 122, par 24–10

"The service of all teachers, principals and super-intendents in the public schools in any district having a board of directors shall be for not more than 3 year periods, after the expiration of a probationary period of 2 *consecutive* years in that district. . . ." (Emphasis added.)

Ill Rev Stats 1961, chap 122, par 24–11

"As used in this and the succeeding sections of this Article, 'teacher' means any or all school district employees regularly required to be certified under laws relating to the certification of teachers, 'board' means board of education or board of school inspectors, as the case may be and 'school term' means that portion of the school year, July 1 to the following June 30, when school is in actual session. This and the succeeding sections of this Article apply only to school districts having less than 500,000 inhabitants, other than those described in Section 24–10.

"Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least 60 days before the end of such period. . . ."

Ill Rev Stats 1961, chap 122, par 24–13

"The contractual continued service status of a teacher shall not be affected by his promotion, absence caused by temporary illness or temporary

incapacity as defined by regulations of the employing board, leave of absence mutually agreed upon between the teacher and the board, or because of absence while in the military service of the United States. A teacher employed to replace one in the military service of the United States shall not acquire contractual continued service under this Article."

██ Under Section 24–11 of The School Code a teacher before acquiring "contractual continued service" status must serve a two-year probationary period consisting of two consecutive school terms as a full-time teacher. The school term is defined as that portion of the school year from July 1 to the following June 30, when school is in actual session. Section 24–13 of The School Code provides that the contractual continued service status of a teacher shall not be affected by absence caused by temporary illness or temporary incapacity as defined by regulations of the employing board. By that section the legislature authorized boards of education to determine by regulation what constitutes temporary illness or temporary incapacity. The board adopted a resolution defining temporary illness or incapacity as continuous absence from duties of less than three school months, and it further provided that if absence from duty extends beyond three months the teacher's contract is terminated at the end of the three month period without any action by the school board. This is found in section 40 of the regulations of the defendant school board adopted April 10, 1956. The purpose of a probationary period under the school code is to give the school board an opportunity to observe and evaluate the teacher's work, and the board has by statute the right to two consecutive school years of probationary period to determine

whether the probationary teacher is in the eyes of the board qualified to enter upon contractual continued service.

■ Plaintiff contends that the Board of Education did not have the right to adopt a rule defining temporary incapacity, and in support of her argument she cites the case of People ex rel. Polen v. Hoehler, 405 Ill 322, 90 NE2d 729. In that case, the plaintiff filed a petition for writ of mandamus asking that the defendant Director of Public Welfare be required to reinstate and reassign her as an institutional worker at the Illinois Soldiers' and Sailors' Children's School at Normal, Illinois, and for other relief not pertinent to the case at bar. The Illinois State Civil Service Commission had adopted a rule which read as follows: "Absence Without Permission Deemed Resignation—An employee absent from duty without leave for a period of three successive days or longer, without proper written notice to and approval by his superior officer of the reason for such absence, shall be considered to have resigned." The plaintiff absented herself from work from May 19, 1947 until May 26, 1947, without giving the notice required by the rule and also without obtaining the required approval. Upon her return, she was told that she had been "fired," and she was subsequently denied a hearing. The defendants argued that, since, according to the rule of the commission, she had resigned, she was not entitled to a hearing. Section 12 of an Act to regulate the civil service of the State of Illinois (Ill Rev Stats 1947, c 24½, par 14) set forth the then existing requirements for removals. The court set forth the pertinent portions of this section and then stated that, under the statute, an employee in the classified civil service could be removed only for cause, upon written charges and after an opportunity to be heard in his own defense. This statute, under Section 12, further provided that

the provisions of the Administrative Review Act applied to and governed all proceedings for judicial review of final administrative decisions of the commissioners under said section. The court held that the rule adopted by the commission and relied upon by the defendants was arbitrary and contrary to law because it deprived the courts of the right to determine the legality of the discharge and left no recourse to the employee. The court on page 328 said:

"When the rule and its effect is critically examined it amounts to no more nor less that that absence for three days, without consent, conclusively operates as a discharge if the superintendent so decides. It is the equivalent to conclusive evidence that a resignation has taken place regardless of the will or inclination of the employee, which in this instance is not only contrary to the express language of the statute, but would invade the power of the judiciary to determine the legality of the discharge, since, if it operates as a resignation, without appeal or review, the courts have been deprived of the right given by statute."

The powers of the defendant, Board of Education, in the instant case, unlike the powers of the defendants in the Hoehler case are governed by the School Code, not the Civil Service Act. The School Code specifically gives the boards of education the power to make regulations defining temporary illness or incapacity. Also, the plaintiff in the Hoehler case was given the right to a hearing under the provisions of the Civil Service Act prior to her removal; the plaintiff in the instant case was not so protected at the time that defendant's rule operated automatically to terminate her second one year contract on March 19, 1962, thus requiring that her two year continuous service probationary period commence to run anew.

Plaintiff argues that here, as in the Hoehler case, the defendant's rule deprives the court of its rights. In this context the plaintiff contends that it was the court's prerogative to determine the legal meaning of the phrase "temporary incapacity" and to apply that phrase to the facts of a particular case.

 In support of the foregoing proposition the plaintiff cites numerous workmen's compensation cases wherein "temporary total incapacity" is defined to be that period immediately after the accident during which the injured employee is totally incapacitated for work by reason of illness attending the injury and which might be described as the period of the healing process. Those cases have no application to the instant case. As has been stated, the school board in adopting this regulation did no more than it was expressly authorized to do by section 24–13 of The School Code. (Ill Rev Stats 1961, c 122, par 24–13.) The only material question before this court on this point is whether the period of time which the board specified in defining temporary illness is unreasonably short. The three-month period is approximately one-third of the school term, and in the opinion of this court the board should be permitted to sever contractual relations with one who is not on tenure and who is unable to perform for that period, which we consider substantial.

Plaintiff lays particular stress upon her testimony that she was able to go back to school and wanted to go back at the time of her conversation with the superintendent of the defendant school district. The testimony did not establish whether the foregoing conversation took place before the expiration of the three-month period following the plaintiff's injury, or after the three-month period had expired. If the conversation took place after the three-month period following her injury, plaintiff's ability and desire at that

66

time would have no legal significance because defendant's rule would already have operated to terminate her contract.

 If she wishes to rely upon the allegation that the conversation lulled her into a sense of security, and that thus a fraud had been perpetrated, plaintiff would have the burden of proving that the conversation had taken place before the running of the three-month period. Once defendant's rule had operated to terminate her contract, there was no longer any recourse available to her by which she might protect the continuous running of her probationary period, and the superintendent's representations could not have kept her from doing anything which would have bettered her position. Defendant did not meet this burden. We do not, therefore, deem it necessary to determine whether or not such conversation would have estopped the defendant from asserting its rule had the conversation taken place before the three months had elapsed.

If it is the plaintiff's contention that she was able to go back and wanted to go back to work prior to the expiration of the three-month period but did not return to work, what material difference would it make to her whether or not the three-month period was a reasonable one. Certainly, we do not think that plaintiff means to contend that if she had an illness, which was cured in less than three months, she could remain away from school for more than three months and have that period count toward the two consecutive probationary years that are required by statute.

If the conversation between the school superintendent of the defendant Board of Education and the plaintiff was after the expiration of the three-month period, the question arises as to whether the superintendent of the Board of Education had the power to waive the provisions of the regulation.

Section 10–21.4 of The School Code (Ill Rev Stats 1961, c 122, par 10–21.4) authorizes the boards of education to employ superintendents and therein provides that the superintendent shall have charge of the administration of the schools under the direction of the board of education. In addition, the superintendent is required to make recommendations to the board concerning the budget, building plans, the locations of sites, the selection of teachers and other employees, the selection of textbooks, instructional material and courses of study. He is required to keep the records and accounts as directed by the board, and perform such other duties as the board may delegate to him.

■■ The foregoing section limits the authority of the superintendent to certain duties therein set forth which are under the direction of the board of education. By this section of the school act the superintendent does not possess the power to make any representations as to tenure of teachers or to waive any rights of the school district. The powers of a board of education to employ teachers, fix their salaries, and discharge them, to determine in what grades they shall teach, and to fix the length and time of the school terms are discretionary powers which cannot be delegated nor limited by contract. (Lindblad v. Board of Education, of McLean County, 221 Ill 261, 77 NE 450.)

In Stroh v. Casner, 201 Ill App 281, the court held that these discretionary powers are to be exercised by those who have been chosen by the people as members of their respective boards, and the People have a right to have those powers exercised by those only in whom they have so placed their confidence.

The plaintiff argues that while the superintendent may not by statute have the power to waive a rule, nevertheless, the Board of Education may waive its own rules relating to a teacher's tenure status. There

is no question in this case but that the Board of Education did not at any time grant a leave of absence to the plaintiff. Further, there is no evidence in this record that the Board of Education ever authorized the superintendent to make any representations to the plaintiff, nor that the Board even knew that the superintendent had made any representation. There is no evidence of any kind to indicate that the defendant in this case waived any provision of its rules. The plaintiff contends that when the defendant employed the plaintiff for the following year after her absence for nearly five months, that by such conduct it had waived its own rule. We feel that this argument is specious. The statute requires that a teacher shall have a probationary period of two consecutive years before acquiring contractual continued service status. The plaintiff in this case did not have two consecutive probationary years at the time she received her notice of dismissal. The Illinois cases relied upon by plaintiff as to a requirement of notice relate to teachers who have already obtained contractual continued service status and are not pertinent to this case. The plaintiff also contends that at the time she received the notice of dismissal dated March 28, 1963 she had already served the equivalent of two full nine-month school terms. That is not enough because the statutory requirement is that the probationary period shall consist of two consecutive school terms.

We therefore conclude that the rule adopted by the defendant as to absence was reasonable; that the power to adopt such a rule is specifically given to the defendant by statute, and that the Superintendent of Schools has no authority to waive the rights of a school board relating to a teacher's probationary period. We further conclude that the Board of Education did not waive the teacher's probationary period

69

in this case. For the foregoing reasons the judgment of the circuit court is reversed.

Judgment reversed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.