CLASSROOM TEACHERS ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF EDUCATION OF THE UNITED TOWNSHIP HIGH SCHOOL DISTRICT No. 30, EAST MOLINE, ILLINOIS, Defendant-Appellee.

(No. 72-269;

Third District—July 17, 1973.

Klockau, McCarthy, Schubert, Lousberg, Ellison & Rinden, of Rock Island, (Robert L. Ellison, of counsel,) for appellants.

Graham, Califf, Harper, Benson & Fox, of Moline, (William H. Dailey, of counsel,) for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This action was brought by a teacher's association and one of its members against a local board of education to prevent the involuntary transfer of the member from her status as a counselor to that of instructor and to require her reassignment as a counselor, a position which she had held for six years. The action is in the form of a petition for a writ of mandamus or alternatively, for a declaratory judgment construing the right of the parties under a collective bargaining agreement. No questions are raised on the pleadings. The Circuit Court of Rock Island County heard evidence without a jury and rendered judgment for the defendant school board denying all relief requested.

The plaintiff, Rita Miller, was a member of the Classroom Teachers Association, a qualified school teacher and an employee of the defendant Board of Education. The Association and the Board had entered into a collective bargaining agreement, articles XI and XII of which are in dispute.

The teacher was transferred from the counseling department to the social studies department (with no reduction in salary). The transfer was communicated by letter on March 29, 1972. Following the notice, plaintiff instituted grievance proceedings after which the Board affirmed its earlier decision to transfer the plaintiff.

Article XI provides that, "* * * involuntary change in employment status * * * shall be for just cause and preceded by

1. Faithful execution of the evaluation procedure and honoring all rights included in this agreement or applicable statutes.
2. Forwarding by registered mail of a written explanation for the action to the teacher.
3. A complete review of the teacher's files by the Superintendent or his designee with the teacher. At teacher's request a representative may be present.

4. If requested by the teacher, a hearing before the board. The teacher shall have the right to present evidence, to call witnesses, be represented. The Board shall have same rights."

Article XII Teacher Evaluation provides "* * *

D. Where deficiencies are observed the teacher shall be notified within 5 working days * * * and specific recommendations for improvement shall be made to the teacher.

E. Evaluation of the work performance shall be in writing.

F. A copy of the written evaluation shall be submitted to the teacher within ten working days * * * copies of any evaluation not directly the result of an observation shall also be submitted * * *.

G. Each observation shall be made in person for a minimum of 30 minutes, conducted openly and with full knowledge of the teacher."

Plaintiff's immediate supervisor testified that he was directly responsible for the teacher's performance as a counselor and that it was his duty to evaluate her performance. He was familiar with the agreement which was in effect from December, 1970. He made several observations of claimed deficiencies in the teacher's performance. He made two written reports. The first was made in May 1971, the second on February 9, 1972. Neither was furnished to the teacher pursuant to article XII of the agreement.

The Superintendent Hill of the school agreed that the evaluation procedures required by the Agreement were not followed. He agreed that a list of specific reasons for the transfer was not given as required. He did not ever give the teacher any specifics (until May 9 after her lawyer requested them and after the transfer) and he stated, "I wanted to stay out of it as far as that was concerned". He further stated that *he made the decision to transfer the teacher.*

There was sufficient evidence to show that the teacher was a great source of irritation to other members of the counseling staff in leaving early one day a week when teaching at a Junior College (she may have had permission to do so) and she had a personality problem with another counselor. Once she corrected papers from the college course during high school hours and during slow periods made lesson plans. She used counseling department secretarial time and materials for the college course. Once she did not attend a faculty meeting. Some 7 or 8 pupils had complained that she was ineffective. She used students to file confidential material. She had changing moods. Her problems had been discussed with her on several occasions.

All claimed deficiencies appear to be remedial and could have been

corrected. In fact it should have been obvious that nearly all the problems were the result of the teaching at the Junior College. This was recognized by her immediate superior who gave a written report to that effect but never told the teacher or gave her a copy.

The trial court found it to be clear that the written evaluations were not given to the teacher but that she had sufficient notice anyway and that in view of *Board of Education .v. Rockford Education Association,* 3 Ill.App.3d 1090, 280 N.E.2d 286, the powers and duties of the Board could not be limited by the agreement.

Does the collective bargaining agreement impose conditions precedent which must be performed before the Board of Education can exercise its discretionary authority to transfer a teacher? And if so, are the provisions of articles XI and XII of the agreement, which appear to limit or delegate the exercise of the statutory duty of the Board to appoint and assign teachers, illegal and void?

■■ All parties agree that public employees in Illinois have a right to join a union. *McLaughlin v. Tilendus,* 389 F.2d 287 and that school boards may enter into valid and binding collective bargaining agreements with public employee unions. *Chicago Division, Ill. Educational Ass'n v. Board of Education,* 76 Ill.App.2d 456; *Board of Education v. Rockford Education Association,* 3 Ill.App.3d 1090; *Chicago High School Assistant Principal's Association v. Board of Education,* 5 Ill.App.3d 672.

■■ The School Code provides that the board has the duty "To appoint all teachers   *   *   *", Ill. Rev. Stat. 1971, ch. 122, sec. 10—20 and 10—20.7 and the cases have held that this power cannot be delegated or limited by contract. (*Elder v. Board of Ed. of School Dist. No. 127½,* 60 Ill.App.2d 56, 68; *Stroh v. Casner,* 201 Ill.App. 281, 286; *Lindblad v. Board of Education,* 221 Ill. 261, 271.) It is generally held that a public employer such as a board of education, in the absence of a statute, cannot negotiate a collective bargaining agreement which involves a surrender of its legal discretion. 48 Am.Jur.2d, Sec. 1202. Annot. 31 A.L.R.2d 1133.

The Tenure Act (Ill. Rev. Stat. 1971, ch. 122, sec. 24—11) is not involved here as there was no reduction in salary. It provides, "*   *   * shall not restrict the power of the board to transfer a teacher   *   *   * but unless reductions in salary are uniform   *   *   * any teacher whose salary is reduced shall be entitled to notice and hearing." Sec. 24—12 further provides, "*   *   * Before service of notice of charges of causes that may be deemed to be remedial, the teacher *shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges.*" (Emphasis supplied.)

Plaintiffs urge that the procedural requirements of the agreement do

not constitute either a delegation or a limitation of the statutory duties of the Board.

No provision of the agreement restricts the power of the Board to hire, discharge or transfer nor requires the Board to delegate authority. (Note that the initial decision herein was made by the Superintendent and approved by the Board.) The provisions do no more than establish certain procedures, consistent with ordinary concepts of fairness, which procedures the Board agreed to follow. None of the procedures limit the power of the board to exercise its absolute discretion unfettered by any considerations save fundamental fairness.

Had the requirements of the agreement been followed the teacher would have had timely notice of the matters ultimately complained of. Steps could have been taken to remedy any claimed deficiencies, to refute untrue allegations or to conciliate conflicts of personality. That is the clear and salutory purpose of these procedures. Here the teacher learned of the basis of her transfer only after it had already occurred. She had no opportunity to make any response to the dissatisfaction of the administration until it was too late.

The procedures in the agreement only serve to maintain a high standard of efficiency and professionalism in the school system. They do not inhibit the discretionary powers of the board and are entirely consistent with the modern concept of due process, and, in fact, when applied in connection with the tenure act, are simply rules to supplement that statutory scheme of fair play.

The trial court was impressed with the holding in *Board of Education v. Rockford Educational Association*, 3 Ill.App.3d 1909, and apparently based its decision on that case. The *Rockford* case was based on a wholly different set of factual circumstance. The holding in that case was that arbitration of matters regarding selection or promotion of teachers could not be delegated by the Board to a professional arbitrator who would thus be making the decision rather than the Board. The agreement herein expressly provides for a hearing before the Board and expressly states, "That this responsibility of final decision making cannot be delegated."

The trial court further held the teacher had adequate notice of the basis for her transfer in that the hearing held pursuant to the agreement gave her sufficient information. We do not agree. The procedures were initiated *after* the teacher had been transferred. By then it was too late. The reasons and basis for the transfer, communicated *after the fact* were only of academic interest and of no use whatsoever to the teacher. If the criticisms had been made known to the teacher *before* the transfer the teacher at least would have had an opportunity to respond and remedy her performance. This is exactly the purpose of the evaluation procedure

set out in the agreement and the record discloses that the Board made no substantial compliance with either the letter or the spirit of that portion of the agreement.

We agree with the trial judge that public schools are not created nor are they supported for the benefit of the teachers therein, but for the benefit of the pupils and the resulting benefit to their parents and the community at large. It has been repeatedly held, however, that the exercise of discretionary powers of transfer must be in good faith. (I.L.P. Schools, Sec. 254.) We find no compliance with what amounted to no more than reasonable rules and regulations of the Board.

■■ The Board argues that the requirement of evaluation by the teacher's supervisor is a delegation of authority to a third person. As a corporate body the board necessarily acts through its agents. The School Code, section 10—21.4a, expressly provides,

> "The principal shall assume administrative responsibilities and instructional leadership, under the supervision of the superintendent, and in accordance *with reasonable rules and regulations of the board,* for the planning, operation and evaluation  *  *  *.

> "The principal shall submit recommendations to the superintendent concerning the appointment, retention, promotion and assignment of all personnel assigned to the attendant center."

And section 10—21.4 of the School Code provides:

> "*  *  *  In addition to the administrative duties, the superintendent shall make recommendations to the board concerning  *  *  *. [He] shall keep  *  *  *  records  *  *  *  required by the board, aid in making reports required by the board, and perform such other duties as the board may delegate to him."

It should be plain that these people are agents of the Board and not "third persons".

The Board has voluntarily agreed to follow reasonable and fair evaluation procedures preliminary to any involuntary transfer of the teacher. If the Board had kept its bargain it would have had the basis of making an informed judgment prior to the transfer of the plaintiff teacher who, in turn, would have had clear warning of her deficiencies with ample opportunity to correct them or to suffer the consequences. We believe that such bargain is consonant with public policy and should be enforced.

■■ Accordingly, the judgment of the trial court of Rock Island County is reversed and the cause remanded with instructions to grant the relief prayed for.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.