THE ILLINOIS EDUCATION ASSOCIATION LOCAL COMMUNITY HIGH SCHOOL DISTRICT 218 *et al.,* Plaintiffs-Appellees, *v.* THE BOARD OF EDUCATION OF SCHOOL DISTRICT 218, COOK COUNTY, Defendant-Appellant.

(No. 57793;

First District (3rd Division)—October 3, 1974.

650

Robbins, Nicholas & Lipton, of Chicago (Jerome N. Robbins and Everett E. Nicholas, Jr., of counsel), for appellant.

Drach, Terrell and Deffenbaugh, of Chicago, for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, The Illinois Education Association Local Community High District 218 (Association), a voluntary organization of classroom teachers, and Henry F. Davis, a member, brought action for declaratory judgment and a writ of mandamus against defendant, The Board of Education of School District 218, Cook County, Illinois (Board). The Association and Board had entered into a collective bargaining agreement. Plaintiff Davis was dismissed by the Board as a probationary teacher. The trial court entered a judgment order which found that defendant breached the agreement and had improperly dismissed Davis, and ordered Davis reinstated and placed on tenure as a teacher, and further allowed a writ of mandamus commanding defendant to assign Davis as a full-time tenure teacher. Defendant appeals.

The issues presented are:

(1) Was the dismissal for causal reasons outside the scope of Appendix XXX of the Collective Bargaining Agreement;

(2) Are the provisions of Appendix XXX ultra vires as a delegation or restriction of the Board's statutory authority;

(3) Does recourse to the grievance procedure with advisory arbitration under the agreement bar a de novo court hearing on the same issues;

(4) Is mandamus a proper remedy;

(5) Did the trial court usurp the statutory discretion of defendant whether to place a probationary teacher on tenure or on third-year probation.

The facts giving rise to this proceeding follow.

Plaintiff Henry F. Davis was employed under annual contract by the defendant Board as a full-time art teacher at the Eisenhower High School in Blue Island, Illinois, for the consecutive school terms of 1969-70 and 1970-71. He was then a non-tenure probationary teacher. On September 28, 1970, the Association and the Board entered into a collective bargaining agreement for the 1970-71 term.

On March 18, 1971, plaintiff Davis was advised in a letter written by Dr. James B. Miller, Assistant Superintendent for Personnel of School

District 218, that he would not be recommended for reemployment for the following school term for certain causes, listing the following charges:

(1) Permitting students to remain in his classroom when their presence was required in other classes;

(2) Leaving his classes unsupervised on three specific occasions;

(3) Failure to exercise reasonable judgment and provide reasonable support to the administration and staff during a period of confrontation between the school district and the students, thus encouraging rebellion against emergency schedules established by the district;

(4) Unacceptable and uncooperative conduct on a specified date wherein Davis made an obscene gesture to security officers during a time of student disturbances and discipline problems;

(5) Failure to maintain an acceptable and cooperative general attitude and accept guidance and suggestions;

(6) Failure to maintain satisfactory working relationships with colleagues, staff members and employees;

(7) Unwillingness to adequately share and fulfill responsibilities in the total school program.

On the following day Davis requested a hearing before the Board which was held on March 29, 1971, and the reasons for non-retention were presented to the Board. Davis attended the hearing, accompanied by counsel, but offered no evidence to rebut the charges made against him. The next day he was advised by letter that the Board decided to and would terminate his services and contract as a teacher, effective June 8, 1971, the last day of the term. Davis then filed a grievance under the terms of the collective bargaining agreement which eventually resulted in advisory arbitration. Davis and the Association then filed the instant proceedings which were then pending concurrently with the grievance procedure. At a hearing on defendant's amended motion to dismiss this action the trial court ordered the motion held in abeyance pending completion of the arbitration process. On December 10, 1971, the arbitrator held that the provisions of Appendix XXX of the agreement were not violated in the dismissal of Davis. Subsequently, an answer was filed by defendant and a trial held on April 6, 1972.

At trial, plaintiff Davis testified to the following: His contract of employment for the 1970-71 school term was completed on June 8, 1971. During the first semester of the term neither the building principal nor an immediate supervisor acquainted him with the evaluation procedures, standards and instruments. He was not advised as to who would observe him and evaluate his performance. Although a probationary teacher, he was not evaluated at any time during the semester; no classroom observa-

tion was made of him; no copy of a formal evaluation was given to him; no conference was held between him and the principal; no consulting teacher was assigned to him; and at no time during the semester were recommendations made to him to improve the quality of his teaching or eliminate the difficulties therein. He was formally evaluated twice during the second semester of the 1970-71 school term. After being notified that termination of his services would be recommended he was not advised of the necessary improvements needed to continue his employment and he was not advised by the superintendent or a designee of his rights under the Illinois Teacher Tenure Act.

Dr. James B. Miller, assistant superintendent, testified. At a conference with Davis on March 18, 1971, he notified him that he would not be recommended for continued employment and handed him a letter setting forth the reasons. They then reviewed Davis' personnel file. He did not advise Davis of the necessary improvements which would have to be made for him to continue in the employ of the Board because he felt the charges in his letter to Davis were self-explanatory. Miller admitted that the classroom evaluation procedures established in Appendix XXX of the collective bargaining agreement were not followed.

Plaintiffs introduced into evidence Exhibit 2 entitled "Statement Concerning Work of Teacher and Recommendation for Reemployment," a recommendation for reemployment form, and Exhibit 3 entitled "Evaluation of Teaching," a teacher evaluation form. Each form is divided into evaluation categories and they encompass matters other than those related exclusively to classroom teaching performance, such as loyalty, willingness to cooperate, professional attitude, relations with others, including other teachers, parents, and the principal, and personal qualifications.

The relevant portions of Appendix XXX of the September 28, 1970 collective bargaining agreement for the 1970-71 school year state:

"A. The parties agree that the primary objective of teacher evaluation is to improve the quality of instruction. The parties recognize the importance and value of a procedure for assisting and evaluating the progress and success of all teachers.

B. Within six (6) weeks after the beginning of each school term, the building principal or immediate supervisor shall acquaint each teacher under his supervision with teacher evaluation procedures, standards, and instruments and advise each teacher as to who shall observe and evaluate his performance. No evaluation, formal or informal, shall take place until such orientation has been completed. A teacher newly employed or a teacher reassigned after the beginning of the school term

shall be notified by his building principal or his designee of the evaluation procedures in effect. Such notification shall be within six (6) weeks of the first day in a new assignment.

C. Formal observation of all teacher duties and responsibilities shall be conducted with the full knowledge of the teacher.

D. Any informal observations which are to be used to evaluate the teacher shall be compiled in writing and discussed with the teacher. A copy of the written compilation shall be given to the teacher.

E. A probationary teacher shall be evaluated at least three (3) times at reasonable intervals during each probationary year; provided that at least one evaluation must occur each semester.

\* \* \*

G. Those responsible for evaluation of classroom teachers shall evaluate each teacher formally in writing.

1) Each formal written evaluation shall be preceded by at least one classroom observation of at least thirty (30) consecutive minutes.

2) A copy of each formal written evaluation shall be given to the teacher and a conference shall be held between the teacher and the building principal or designee within five (5) school days following the classroom observation. A copy signed by both parties shall be retained by the teacher."

\* \* \*

H. The evaluator shall provide the teacher with recommendations to improve the quality of teaching and to eliminate difficulties noted in the evaluation.

I. The building principal or immediate supervisor shall assign a consulting teacher to every probationary teacher upon entrance of the probationary teacher into the school system. The consulting teacher, insofar as possible, shall be a tenure teacher with a minimum of three (3) years teaching experience and shall be engaged in teaching within the same grade, building, or subject area as the probationary teacher. The consulting teacher shall assist the probationary teacher in acclimating to the teaching profession and the school system. The consulting teacher shall not be involved in the evaluation of the probationary teacher.

J. Not later than sixty (60) days before the close of each school term, the building principal or his designee shall complete a

written evaluation report and make recommendations to the superintendent for each probationary teacher. A copy shall be furnished to the teacher. The report shall not contain information which has not previously been made known to and discussed with the probationary teacher.

K. When any evaluation indicates the possibility that any teacher may not be recommended for continued employment, the teacher shall be so advised in writing with reasons and necessary improvements, if any, that may be required for this teacher to be recommended for continued employment.

L. A teacher whose services are being considered for termination shall be advised by the superintendent or his designee of his rights under the Teacher Tenure Act (Sections 24—12 through 24—16 of The School Code of Illinois). Such notification of termination shall be in the form of a registered letter, which shall include a statement of charges from the Board, the times and dates and specifics of any conduct upon which the charges are based, and names of witnesses.

M. Discharge, demotion, or other involuntary change in the employment status of any teacher shall be preceded by:

    (1) *The faithful execution of the evaluation procedures for the evaluation of classroom teaching performance and the honoring of all teachers' rights included in this agreement* and applicable statutes. [Emphasis added.]

    (2) A conference with the teacher by the appropriate administrator prior to taking any action.

    (3) A written explanation for the action to the teacher.

    (4) A complete review of the teacher's personnel file with the teacher, and

    (5) There shall be a hearing before the Board if requested by any non-tenure teacher whose contract is not renewed: * * *."

The pertinent provisions of section 24—11 of the Illinois School Code (Ill. Rev Stat. 1971, ch. 122, par. 24—11) are:

"Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least 60 days before the end of such period. If, however, a teacher has not had 1 school term of full-time teaching experience prior to the beginning of such probationary period, the employing board may at its option

extend such probationary period for 1 additional school term by giving the teacher written notice by registered mail at least 60 days before the end of the second school term of the period of 2 consecutive school terms referred to above."

On April 12, 1972, a judgment order was entered in which the trial court stated, *inter alia:*

"I conclude, therefore, that Appendix XXX is not applicable only with respect to evaluation of classroom performance and that the acts complained of and used as a basis of discharge were within the purview of Appendix XXX.

"I hold, that the defendant, since it did not follow the binding provisions of Appendix XXX, M(1) breached the contract and its act of dismissal of the plaintiff was improper. Since the two year period has elapsed he is now a tenure teacher and may be removed only for cause after a hearing pursuant to the Statute. The petition for writ of mandamus will be allowed."

We now proceed to a consideration of defendant's contentions upon appeal:

## I.

Defendant initially contends that the terms of the collective bargaining agreement do not prohibit the discharge of a non-tenure teacher for cause, and argues that the agreement is inapplicable to dismissals arising outside the classroom teaching experience. The trial court correctly observed that the question presented herein is one of contract construction rather than whether the defendant abused its statutory discretion. We must determine whether the provisions of Appendix XXX, M, of the collective bargaining agreement include dismissals based upon reasons such as were involved in the discharge of plaintiff Davis, and if so, whether there was sufficient evidence to show that these procedures were not complied with prior to terminating his services.

It is well established that the primary objective of contract construction is to give effect to the intent of the contracting parties. (*One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1973), 14 Ill.App.3d 438, 302 N.E.2d 703; *Parker v. Arthur Murray, Inc.* (1973), 10 Ill.App.3d 1000, 295 N.E.2d 487.) Two of the rules of construction which have been developed to effectuate this primary objective are particularly relevant here. The intent of the parties must be gathered from the contract as a whole and not from the isolation of any one clause alone. (*Goldblatt Bros., Inc. v. Addison Green Meadows, Inc.* (1972), 8 Ill.App.3d 490, 290 N.E.2d 715.) Further, in construing a contract, meaning and effect must be given to every part, including all

terms and provisions, and no part of a contract should be rejected as meaningless or surplusage unless absolutely necessary. (*Gross v. University of Chicago* (1973), 14 Ill.App.3d 326, 302 N.E.2d 444.) In reliance upon these principles we conclude that the trial court did not err in holding that Appendix XXX, M(1), of the agreement was applicable to Davis' dismissal. Moreover, we find that the trial court's determination in the instant case that the procedures established in the Appendix as a condition precedent to termination were not complied with is not contrary to the manifest weight of the evidence. *Wehrmeister v. Carlman* (1958), 17 Ill.App.2d 171, 149 N.E.2d 453.

Defendant urges that the dismissal of Davis was outside of the scope of Appendix XXX-Teacher Evaluation and therefore was not subject to its provisions. Reliance is placed on the first section thereof which states:

> "A. The parties agree that the primary objective of teacher evaluation is to improve the quality of instruction. The parties recognize the importance and value of a procedure for assisting and evaluating the progress and success of all teachers."

Defendant maintains that since the stated purpose of teacher evaluation is to improve the quality of instruction, the provision of section M could not exceed that general purpose and relate to changes in employment status for other reasons generally, nor in areas not related to the quality of instruction. Defendant would isolate section A which we note initially refers to the "primary" objective, rather than providing an exclusive objective. It is necessary to consider the entire agreement to determine its overall purpose.

As clearly stated by the trial court, defendant's interpretation would result in making the phrase in section M(1)—"for the evaluation of classroom teaching performance"—redundant and unnecessary. Again, in section C, provision is made for "[f]ormal observation of all teacher duties and responsibilities," and is not limited to all *classroom* teacher duties and responsibilities as construed by defendant. Defendant here has also argued that the trial court erred in relying on plaintiffs' Exhibits 2 and 3 in that no evidence was submitted that such evaluation instruments were intended to be limited to matters covered by the collective bargaining agreement, but we need not reach this argument. At trial, no objection was made to the introduction of Exhibit 2, and although defendant did object to the introduction of Exhibit 3, the objection was that it was immaterial. Objections not raised at trial and objections upon a different basis than made at trial cannot be asserted on appeal. (*Questelle v. Hamp* (1973), 9 Ill.App.3d 802, 293 N.E.2d 137; *Plaza Express Co. v. Middle States Motor Freight, Inc.* (1963), 40 Ill.App.2d 117, 189 N.E.2d 382.) Exhibits 2 and 3, which related to

teacher evaluation and recommendations for reemployment, indicate that defendant recognized that any evaluation of a teacher's qualifications involved more than mere classroom performance. Accordingly, we hold that Davis' discharge had to be preceded by the procedures as set forth in section M of Appendix XXX.

■■ The record in the instant case contains ample evidence to support the trial court's finding that the procedures required to precede any termination of employment were not followed. Davis testified that he was never informed of the evaluation procedures; that he was not evaluated formally during the first semester of the 1970-71 school term; that no consulting teacher was assigned to him; that no recommendations were made to him to improve the quality of his teaching or eliminate difficulties therein; and that he was not informed of his rights under the Teacher Tenure Act. Furthermore, the witness for the defendant Board, Dr. James B. Miller, admitted that the procedures required in Appendix XXX were not followed. Clearly, the trial court's finding was not contrary to the manifest weight of the evidence.

## II.

■■ Defendant further contends that if the failure to comply with the provisions of Appendix XXX, M would bar the discharge, a school board has no power to enter into such agreement which, in effect, contracts away the statutory authority to dismiss teachers for cause. In Illinois it has been held that a school board can enter into a binding collective bargaining agreement with a bargaining agent selected by its teachers, and such agreement is not contrary to public policy. (*Chicago Division of the Illinois Education Association v. Board of Education* (1966), 76 Ill.App.2d 456, 222 N.E.2d 243.) However, a board may not, through a collective bargaining agreement or otherwise, delegate to another those matters of discretion that are vested in the board by statute which includes the power and duty to appoint and discharge teachers. (See *Board of Education v. Rockford Education Association* (1972), 3 Ill.App.3d 1090, 280 N.E.2d 286; *Elder v. Board of Education* (1965), 60 Ill.App.2d 56, 208 N.E.2d 423.) However, we believe that the issue here is controlled by the recent case of *Classroom Teachers Association v. Board of Education* (1973), 15 Ill.App.3d 224, 304 N.E.2d 516.

In *Classroom Teachers* a member of a teachers' association who had been involuntarily transferred from her status of counselor to that of instructor, filed, together with the teachers' association, an action for a writ of mandamus and for declaratory judgment. Plaintiffs alleged that the defendant board of education did not fulfill the conditions precedent imposed by a collective bargaining agreement between the association and

the school board. The conditions precedent are similar to those in the case before us. The defendant admitted that the contract provisions had not been complied with. The trial court there found that the written evaluations were not given to the teacher, but that the powers and duties of the board could not be limited by the agreement which violated the prohibition against delegation or impairment of the powers and duties of the board, in view of *Board of Education v. Rockford Education Association, supra.* The appellate court reversed and held that the provisions of the collective bargaining agreement did not restrict the statutory powers of the school board to hire, discharge or transfer teachers, nor did it require the board to delegate any authority. The court there stated that the agreement did no more than establish certain procedures consistent with the ordinary concepts of fairness which the board agreed to follow, and that none of these procedures limited the power of the board to exercise its absolute discretion unfettered by any considerations save fundamental fairness. The court distinguished *Rockford* as factually different and held that binding arbitration regarding selection or promotion of teachers could not be delegated, whereas the agreement in *Classroom* expressly provided for a hearing before the board, and that the responsibility of final decision making could not be delegated. The court reversed and remanded the cause with instructions to enter the relief prayed by plaintiffs.

■■ The facts of the instant case are almost identical to those in *Classroom* except that the teacher there was involuntarily reassigned, and in the instant case the teacher was discharged. The conditions precedent to an involuntary change in employment status are also substantially the same. As in *Classroom,* the collective bargaining agreement here provides that the defendant Board retains and reserves all rights, powers, authority, duties and responsibilities vested in it by statute providing that such will be exercised in conformity with the provisions of the contract. Therefore, in accord with *Classroom,* we conclude that the provisions contained in Appendix XXX of the collective bargaining agreement herein are not ultra vires of the contractual powers of the defendant Board, and that the provisions are binding and enforceable against it.

### III.

Defendant next contends that where the collective bargaining agreement provides an advisory arbitration as a grievance procedure a party who has utilized such arbitration cannot thereafter seek a de novo hearing in the courts. Again, it is not necessary to reach the merits of this contention as this point has been waived by defendant's failure to assert it as a defense at trial. Defendant filed an amended motion to dismiss

which alleged in part that plaintiffs were precluded from maintaining the present action because the administrative remedy of arbitration had not then been completed. At a hearing on the motion and at the insistence of the defendant, the trial court ordered that the court proceedings be held in abeyance pending completion of the arbitration process. Defendant cannot now raise the question of the arbitration process being the plaintiffs' exclusive remedy under the collective bargaining agreement when the question was not presented to the trial court. *Shaw v. Lorenz* (1969), 42 Ill.2d 246, 246 N.E.2d 285; *Banks v. City of Chicago* (1973), 11 Ill.App.3d 543, 297 N.E.2d 343.

## IV.

Defendant also contends that the trial court erred in granting the plaintiffs' petition for a writ of mandamus in that the extraordinary remedy of mandamus does not lie to compel performance of an obligation under contract, but lies only as to ministerial acts of statutory origin. We believe that defendant has confused the nature of the relief granted by the trial court with its determination of the rights and obligations of the parties under the collective bargaining agreement. The trial court held that the provisions of Appendix XXX of the agreement were binding and enforceable against defendant and that the provisions were applicable to and constituted conditions precedent to Davis' discharge. The evidence established that defendant had breached the collective bargaining agreement by not complying with those provisions prior to Davis' dismissal, thus rendering his termination improper.

■■ Section 24—11 of The School Code clearly states that any full-time teacher who completes a probationary period of two consecutive school terms automatically enters tenure status unless given written notice of dismissal at least 60 days prior to the end of such period. (Ill. Rev. Stat. 1971, ch. 122, par. 24—11.) Here, as the contractual prerequisites to terminating Davis' employment had not been met, the automatic provision of the statute became operative. Consequently, the grant of plaintiffs' petition for a writ of mandamus was directed at the enforcement of a mandatory provision of the statute and not the obligations of defendant under the collective bargaining agreement. Mandamus is a proper remedy to compel action in conformity with the statute. The granting of plaintiffs' petition for a writ of mandamus in the instant case was not error. *Classroom Teachers Association v. Board of Education, supra; Betebenner v. Board of Education* (1949), 336 Ill.App. 448, 84 N.E.2d 569.

## V.

■■ Defendant's final contention is that the trial court erred in usurping the statutory discretion of defendant Board to decide whether to

place a non-tenure teacher on tenure or issue such a teacher a third-year probationary contract. It is argued that if Davis was to be reinstated, defendant had discretion, under section 24—11 of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 24—11), to either extend his tenure or offer him a third-year probationary contract. We disagree. This argument overlooks the statutory requirement that the option of extending a probationary teacher to a third-year probationary contract must be exercised within 60 days of the end of the second consecutive school term of probationary teaching. The defendant did not exercise this option within the required time and in the required manner. Instead, it improperly attempted to terminate Davis' employment. Upon completion of his second term of probationary teaching defendant had no discretion remaining because Davis had automatically acquired tenure by operation of the statute. *Donahoo v. Board of Education* (1952), 413 Ill. 422, 109 N.E.2d 787.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.