30 Ill. App.3d 67 (1975)
331 N.E.2d 335
WESCLIN EDUCATION ASSOCIATION et al., Plaintiffs-Appellants,
v.
THE BOARD OF EDUCATION OF WESCLIN COMMUNITY UNIT SCHOOL DISTRICT OF CLINTON AND ST. CLAIR COUNTIES, Defendant-Appellee.
No. 74-62.
Illinois Appellate Court  Fifth District.
July 1, 1975.
Rehearing denied August 4, 1975.
*68 *69 Drach, Terrell and Deffenbaugh, P.C., of Springfield, for appellants.
Eugene H. Widman, of Belleville, for appellee.
Judgment affirmed.
Mr. JUSTICE EBERSPACHER delivered the opinion of the court:
The Wesclin Education Association, a teachers' association, and two of its members, John Rinderer and Anita Wick, brought separate actions against the defendant, the Board of Education of Wesclin Community Unit School District No. 3 of Clinton and St. Clair Counties, in the form of petitions for writs of mandamus to prevent the dismissal of each of its respective members or, alternatively, for declaratory judgments construing the rights of the parties under the "professional negotiations agreement." Upon a motion of the defendant these separate actions were consolidated for the purposes of taking evidence. The circuit court of Clinton County heard the evidence without a jury and rendered judgment for the defendant school board denying all relief requested. In its "Ruling and Judgment" the trial court dismissed the petitions for writs of mandamus, denied relief under the complaints for declaratory judgments and entered judgments in favor of the defendant school board. The plaintiffs have perfected this appeal seeking a reversal of the "Ruling and Judgment" entered by the trial court.
The plaintiffs alleged in their respective petitions and complaints that the dismissal of Rinderer and Wick contravened the "professional negotiation agreement" entered into by the defendant school board and the Wesclin Education Association for the school year 1972-1973. The defendant denied, in its pleading, that the "professional negotiations agreement," was valid and binding.
*70 The "professional negotiations agreement," purported copies of which were attached to plaintiffs' initial pleadings, provided in article VII:
"Teacher Evaluation:

A. The parties agree that the primary objective of teacher evaluation is to improve the quality of instruction. The parties recognize the importance and value of a procedure for assisting and evaluating the progress and success of all teachers.
B. Teachers accept the principle that when performing assigned tasks and tasks normal to their daily work, their performance shall be subject to evaluation.
C. The building principal or designated supervisor of a teacher not assigned to a building shall be responsible for evaluation of all teachers assigned to his building or program.
D. Within 30 days after the beginning of each school term, the building principal or immediate supervisor shall acquaint each teacher under his supervision with teacher evaluation procedures, standards, and instruments and advise each teacher as to who shall observe and evaluate his performance. No evaluation, formal or informal, shall take place until such orientation has been completed.
A teacher newly employed or a teacher reassigned after the beginning of the school term shall be notified by his building principal or immediate supervisor of the evaluation procedures in effect. Such notification shall be within 30 days of the first day on a new assignment.
E. Observation of all teacher duties and responsibilities shall be conducted with the full knowledge of the teacher.
F. Any informal observations which are to be used to evaluate the teacher shall be compiled in writing and discussed with the teacher. A copy of the written compilation shall be given to the teacher.
G. A probationary teacher shall be evaluated at least two (2) times during each probationary year.
H. A tenure teacher should be evaluated at least once each year.
I. The building principal or immediate supervisor shall provide the teacher with definite, positive assistance to improve the quality of teaching and to eliminate difficulties noted in the evaluation.
J. Discharge, demotion, or other involuntary change in the employment status of any teacher shall be for just cause and preceded by:

*71 1. The faithful execution of the evaluation procedure and the honoring of all teachers' rights included in this agreement and applicable statutes.
2. A conference with the teacher by the appropriate adminstrator prior to taking any action.
3. A written explanation for the action to the teacher.
4. A complete review of the teacher's personnel file with the teacher and his representative, and
5. There shall be a hearing before the Board if requested by the teacher at which hearing:
a. the teacher shall have the right of being present at the hearing with counsel and of cross-examining witnesses.
b. the Board or the administration shall not present and make known to the teacher evidence not previously recorded in the teacher's personnel file prior to the notification of the discharge, demotion, or other involuntary change in employment status,
c. the teacher may offer evidence and witnesses and present defenses to the charges,
d. the teacher may choose whether the hearing may be closed to the public.
K. Each teacher shall have the right, upon request, to review the contents of his personnel file. A representative of the Association, at the teacher's request, may accompany the teacher in this review."
Although an extended review of the evidence presented in the trial court would serve no useful purpose, the evidence relevant to the introduction into evidence of the "professional negotiations agreement" will be reviewed at this juncture. Plaintiff Wick identified petitioners' exhibit no. 1 as the "professional negotiations agreement" entered into by the Wesclin Education Association and the defendant school board. At the conclusion of Wick's testimony, petitioners' exhibit no. 1 was offered into evidence. The defendant expressed its objection to this exhibit in the following manner:
"* * * it has not been executed by the Wesclin Teacher's Association; and it has not been executed by the Board of Education, and the Board of Education is a governmental body, State of Illinois. Whatever they do has to be in writing and has to be signed; and this document here is a piece of paper that has not been signed by any party; and therefore it is immaterial and should not be admitted into evidence."
*72 The trial court overruled the objection and accepted the document into evidence.
 1 The trial court did not err in admitting into evidence the purported agreement over the objection as to its materiality. The purported agreement is clearly material since it goes to a substantial matter in dispute, i.e., the existence of a valid subsisting agreement, and since it has a legitimate and an effective influence or bearing on the disposition of the case. In view of the evidence that the board did adopt the "professional negotiations agreement" as shown by their minutes, even though it may not have been signed by officers of the Board, and in further view of the evidence to the effect that this particular agreement was posted in the teachers' room and that these particular teachers were admonished by administrators of the school to read and consult it, we see no reason why it was not admissible into evidence.
The trial court, in its "Ruling and Judgment", stated:
"While the court believes the board can be bound by the agreement with the Association and believes that the administration should abide faithfully by the spirit of the agreement, the board cannot be bound by the narrow discretion asked for by plaintiff in deciding whether it should fire or rehire a teacher not on tenure."
The trial court, after reviewing evidence, continued by stating:
"It is apparent the school board attempted to comply with the agreement, but in reluctance to say Mrs. Wicks was an unsatisfactory teacher in the reasons for dismissal, they ended up in effect giving no reasons, except as the statement was backed up by the conference.
While attempted compliance with an agreement is not compliance, there must be a meeting of the minds as to what is required in an agreement. The court finds that the board attempted to comply with its understanding of the agreement."
The foregoing language leads us to the conclusion that the trial court found sufficient evidence to hold that the "professional negotiations agreement" was agreed upon between the Wesclin Education Association and the defendant school board. We are not able, however, to determine whether the trial court based its decision on the invalidity of the "professional negotiations agreement" or upon the defendant's compliance with the procedures set forth therein. Since our examination of the record not only fails to dispell, but reenforces, the doubt we entertain concerning the propriety of the trial court's ruling regarding the defendant's purported compliance with the "professional negotiations agreement," *73 we will focus our attention on whether said agreement was valid and binding on the defendant school board.
 2 It is well settled that public employees have the right to join a union. (McLaughlin v. Tilendis (7th Cir.1968), 398 F.2d 287.) It is equally well settled that school boards may enter into valid and binding collective bargaining agreements with public employee unions. See Classroom Teachers Association v. Board of Education, 15 Ill. App.3d 224, 304 N.E.2d 516, 519, 520, and the cases collected therein.
The only statutory requirements for the dismissal of a nontenured (probationary) teacher are that he be dismissed on the grounds enumerated in section 10-22.4 of the School Code, which provides, "To dismiss a teacher for incompetency, cruelty, negligence, immorality, or other sufficient cause and to dismiss any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Section 24-10 to 24-15, inclusive. Marriage is not a cause of removal," and that he, "receive written notice from the employing board at least 60 days before the end of any school term whether or not he will be re-employed for the following school term." Ill. Rev. Stat. 1971, ch. 122, par. 24-11.
It is undisputed that the plaintiffs Rinderer and Wick were first-year probationary teachers and that they received notices of dismissal from the employing board more than 60 days before the end of the school term. The notice of dismissal received by the plaintiff Rinderer stated that he was being dismissed because of "unsatisfactory performance." The notice received by plaintiff Wick stated that she was being dismissed "in the best interest of the school district." Since the defendant school board satisfied the statutory requirements for the dismissal of nontenured teachers, we must determine whether the contractual provisions which provide for additional procedures are enforceable. More precisely, do the evaluation procedures in article VII of the "professional negotiations agreement" limit the ability of the defendant to discharge nontenured teachers in a manner inconsistent with the discretion granted the respective board of education by the legislature.
The plaintiffs cite Classroom Teachers Association v. Board of Education (3rd Dist. 1973), 15 Ill. App.3d 224, 304 N.E.2d 516, for the following proposition:
"The agreement between the Board and the teachers' organization only serves to maintain a high standard of efficiency and professionalism in the school system. The agreement does not inhibit the discretionary power of the Board to dismiss teachers and is entirely consistent with the modern concept of due process and in *74 fact when applied in connection with the tenure act simply constitutes rules to supplement the statutory scheme of fair play."
Classroom Teachers Association, involved an involuntary transfer of a tenured teacher who was a member of the teachers' association from her status as a counselor to that of an instructor. The teachers' association and the transferred member filed a petition seeking a writ of mandamus or, alternatively, for a declaratory judgment, alleging that the transfer violated articles XI and XII of the collective bargaining agreement entered into by the teachers' association and the board of education. The trial court denied the relief requested. Article XI provided that an involuntary change in employment status shall be for just cause and preceded by four enumerated procedures, including evaluation, review, written explanation, and, if requested, a hearing before the board. Article XII provided for the procedures to be followed in teacher evaluation. The appellate court reversed the trial court and stated:
"The Board has voluntarily agreed to follow reasonable and fair evaluation procedures preliminary to any involuntary transfer of the teacher. If the Board had kept its bargain it would have had the basis of making an informed judgment prior to the transfer of the plaintiff teacher who, in turn, would have had clear warning of her deficiencies with an ample opportunity to correct them or suffer the consequences. We believe that such a bargain is consonant with public policy and should be enforced."
We note that a similar result was reached in Illinois Education Association v. Board of Education (First District 1974), 23 Ill. App.3d 649, 659, 320 N.E.2d 240, wherein the court stated,
"The facts of the instant case are almost identical to those in Classroom except that the teacher there was involuntarily reassigned, and in the instant case the teacher was discharged. The conditions precedent to an involuntary change in employment status are also substantially the same. As in Classroom, the collective bargaining agreement here provides that the defendant Board retains and reserves all rights, powers, authority, duties and responsibilities vested in it by statute providing that such will be exercised in conformity with the provisions of the contract. Therefore, in accord with Classroom, we conclude that the provisions contained in Appendix XXX of the collective bargaining agreement herein are not ultra vires of the contractual powers of the defendant Board, and that the provisions are binding and enforceable against it."
Notwithstanding the apparent similarity between the foregoing cases and the instant case, we are not inclined to hold such cases here applicable. *75 In Classroom Teachers Association, the court was confronted with the involuntary transfer of a tenured teacher and not, as in the instant case, with the nonrenewal of a nontenured teacher's contract. We find this distinction significant since the School Code establishes, and maintains, numerous distinctions between the rights accorded to tenured teachers and those accorded to nontenured teachers. Despite the fact that the court in Illinois Education Association was confronted with the rights of nontenured teachers, it found Classroom Teachers Association dispositive. We are not so inclined.
 3, 4 The issue before this court is whether a school board can impose upon itself conditions precedent to the dismissal of a nontenured teacher, which are in excess of the conditions imposed by the School Code. In order to analyze this issue we must examine the nature and origin of a school board's power. A school board is the creation of the General Assembly. (Ill. Rev. Stat. 1971, ch. 122, par. 10-1 et seq.) It is a body politic and corporate created to perform governmental functions in connection with the education of children in its respective school district and it has such powers as are expressly conferred or such as may be necessary to carry into effect those granted by the General Assembly. (Board of Education v. Chicago Teachers Union, 26 Ill. App.3d 806, 326 N.E.2d 158; Rosenheim v. City of Chicago, 12 Ill. App.2d 382, 139 N.E.2d 856.) Statutes conferring powers on a school board must be strictly construed and should be construed not only as a grant of power but also as a limitation thereof. Bohn v. Stubblefield, 238 Ill. App. 453.
 5 Section 10-22.4 of the School Code vests a board of education with the authority to dismiss teachers. Such authority is limited only by sections 24-11 to 24-15, inclusive. Under section 24-11 of the School Code, a "probationary" (nontenured) teacher is only entitled to receive "written notice from the employing board at least 60 days before the end of any school term whether or not he will be re-employed for the following school term" (Ill. Rev. Stat. 1971, ch. 122, par. 24-11); whereas under section 24-12, a teacher in continued contractual service status is entitled to procedural protection such as a hearing, specific charges and proper cause, warnings in remedial cases and preference in rehiring where dismissal is due to the decrease in the number of teachers. As stated by the court in Rock-ford Education Association v. Board of Education, 11 Ill. App.3d 78, 80, 296 N.E.2d 100, 102:
"The Teacher Tenure Law appears to be designed primarily for the protection of tenured teachers, evidencing an intent to give first year probationary teachers the least amount of protection and the board the maximum amount of flexibility in dealing with such teachers so long as the notice requirement is fulfilled. People *76 ex rel. Ruff v. School Directors (1948), 335 Ill. App. 445, 448, 82. See also Hankenson v. Board of Education (1957), 10 Ill.2d 560, 563.
We believe that just as a school board cannot abrogate the procedural safeguards accorded tenured teachers, neither can it, by means of a collective bargaining agreement, destroy the flexibility accorded it with respect to the dismissal of nontenured teachers. See Board of Education v. Rockford Education Association, 3 Ill. App.3d 1090, 280 N.E.2d 286; Elder v. Board of Education of School District No. 127 1/2, 60 Ill. App.2d 56, 208 N.E.2d 423; Stroh v. Casner, 201 Ill. App. 281.
 6 In the absence of a statute, a public employer such as a board of education cannot negotiate a collective bargaining agreement which involves the delegation of a statutory duty or the surrender of the legal discretion granted thereunder. (48 Am.Jur.2d Labor and Labor Relations § 1202.) As stated in Board of Education v. Rockford Education Association, 3 Ill. App.3d 1090, 1093, 280 N.E.2d 286, 287;
"* * * a board may not, through a collective bargaining agreement or otherwise, delegate to another party those matters of discretion that are vested in the board by statute. The School Code provides that the board has the duty `To appoint all teachers and fix the amount of their salaries * * *.' (Ill. Rev. Stat. 1969, ch. 122, par. 10-20 and 10-20.7.) The cases have held that these are among the powers and duties of a board that cannot be delegated or limited by contract. Elder v. Board of Ed. of School Dist. No. 127 1/2, 60 Ill. App.2d 56, 68; Stroh et al. v. Casner et al. 201 Ill. App. 281, 286; Lindblad v. Board of Education, 221 Ill. 261, 271.
Likewise, the ultimate decision whether to dismiss a teacher is a duty which rests upon a board of education (Ill. Rev. Stat. 1971, ch. 122, par. 10-22.4) and such board may not, by means of a collective bargaining agreement, delegate or limit the power to dismiss granted it by the General Assembly.
 7 It is generally accepted that the purpose of our common school system is to furnish adequate education facilities and education and training for the students enrolled. A school board is obligated to hire only properly trained, evaluated and qualified teachers. The purpose of our common school system is not to evaluate, train, supervise, guide, and advise teachers although such procedures may be involved incidentally in this development of an educational system; but when so involved, the purpose is to better the system for the benefit of the students, and not for *77 the benefit of the teachers who may either by indifference or lack of ability display that their employment is not in the best interests of the school district, or is unsatisfactory. As a result we do not look with favor on such provisions as are provided by article VII of the "professional negotiations agreement" being made a condition precedent to the statutory power to not renew contracts of nontenured teachers.
 8 At no time has our legislature in the execution of its obligation to provide for high-quality education seen fit to impose upon the public schools through the secondary level, an obligation to evaluate and train those who are employed as nontenured teachers, nor has it seen fit to provide any conditions for the termination of their services other than those imposed by sections 10-22.4 and 24-11 of the School Code. Neither do we know of any instance in which those provisions have been held to be lacking in providing due process for nontenured teachers. Such teachers are not in an "on the job training" status, but are employed as persons qualified by training and practice under the supervision, guidance and training furnished by other educational institutions. Since some of those so qualified may not be capable of serving the best interests of the school, the legislature has seen fit to allow a broad discretion in termination of their employment, as being in the best interests of the school. Since they have not completed their probationary period they have no vested interest in their employment, of which they are deprived by compliance with the applicable provisions of the School Code in the termination of their employment.
 9 The collective bargaining agreement in the instant case, the "professional negotiations agreement," purported to establish elaborate evaluation procedures for both tenured and nontenured teachers. It also purported to bestow upon nontenured teachers many of the rights which the legislature had specifically reserved for tenured teachers under the provisions of sections 24-11 and 24-12 of the School Code. We find that the school board was without authority to enter into such an agreement and that those provisions of the "professional negotiations agreement" which are at variance with the School Code are ultra vires. In particular, we hold that a school board may not establish conditions precedent to the dismissal of nontenured teachers which are in excess of the conditions imposed by the School Code. Since the provisions of the "professional negotiations agreement" upon which the plaintiffs have based their prayer for relief are unenforceable, as being against the public policy established by the General Assembly under the School Code, we conclude, as did the trial court for other reasons, that the plaintiffs are entitled to no relief.
*78 Accordingly, we affirm the judgment entered by the circuit court of Clinton County.
Judgment affirmed.
CARTER, J., concurs.
Mr. PRESIDING JUSTICE G. MORAN concurs in the result but does not agree with all of the language in the opinion.