EDWIN W. ALLEN *et al.*, Plaintiffs-Appellees, *v.* ELEANOR C. MAURER *et al.*, Defendants-Appellants.

(No. 11689;

Fourth District—July 18, 1972.

*Rehearing denied August 24, 1972.*

Drach, Terrell & Deffenbaugh, of Springfield, and Levin, Levin, Garvett & Dill, of Detroit, Michigan, (R. W. Deffenbaugh and Erwin B. Ellman, of counsel,) for appellants.

DePew, Grimes & DePew, of Colfax and Allen Schwartz, Legal Advisor, SPI, of Chicago, (Donald L. Wilber, of counsel,) for appellees.

Monroe, McGaughey, Cleave & Taylor, of Decatur, (Jack Taylor, of counsel,) for *amicus curiae*.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This case comes to us from the Circuit Court of Macon County, and is an interlocutory appeal from a denial of a Motion to Vacate a tem-

porary injunction. A recital of the relevant facts is necessary for a discussion of the legal issues presented.

On April 13, 1971, the Board of Education for Decatur School District No. 61 (hereinafter referred to as Board of Education) approved a calendar for the 1971-1972 school term which established August 25, 1971, as the opening day of school. The teachers employed in the Decatur School system for the 1970-1971 school term were operating under a master contract executed between the Board of Education and the Decatur Education Association that was effective on September 17, 1970, and which expired by its terms at midnight on August 25, 1971. Although not specifically stated in the record, it is apparent that the Board of Education and the teacher's association had met for several months prior to August 25, 1971, in an attempt to negotiate a new master contract for the 1971-1972 school year. These efforts proved unsuccessful and when the pupils returned to their classrooms on August 25th, the teachers failed to report to work.

On August 27, 1971, the Board of Education instituted an action for declaratory judgment in the Circuit Court of Macon County, seeking a declaration that thirty-eight individual teachers named as Defendants were no longer employees of the school board. In this action the Board of Education maintained that because of the fact these individual defendants had failed to report to work on August 25, 1971, their services as school teachers were terminated. On the 3rd day of September, the Court entered an Order granting the Board of Education leave to add as parties defendant to their declaratory judgment action, *all* teachers who failed to appear for teaching duty on both August 25th and August 26th, 1971.

On the 13th day of September, 1971, the suit that we are concerned with in this appeal was filed in the Circuit Court of Macon County by certain individual plaintiffs. Their complaint sought an injunction against the National Education Association, the Illinois Education Association, the Decatur Education Association, and several hundred teachers who were employed by the school district during the 1970-1971 school year. The Complaint alleged that the plaintiffs were taxpayers residing in the City of Decatur and were parents of children enrolled in schools within Decatur School District No. 61. It further alleged that the Board of Education had established August 25, 1971, as the starting date of school, and that in violation of their contractual duty the individual defendants failed to report for school on the aforesaid date, and on the date of the complaint continued to refuse to carry out the terms of their employment. Additionally, the Complaint alleged that the teachers were picketing the Board of Education, and that their picketing and with-

holding of services constituted an illegal strike against the Board of Education. The picketing and withholding of services by the individual teachers, the Complaint asserted, caused irreparable injury and damage to the plaintiffs, their children, and numerous other children in similar circumstances, and that the injury and damage could not be compensated for in an action at law. The complaint concluded with a prayer for a temporary injunction, without notice or bond, restraining the defendants from picketing and withholding their services. It also prayed for an order directing the individual defendants to report to their assigned classrooms and offices, and to fulfill their contractual obligations with the Board of Education.

The following day, September 14, 1971, a temporary restraining Order was issued by the Circuit Court. The Court found that the Plaintiffs were seeking well recognized reliefs; that the defendant teachers were public employees and, as such, could not lawfully strike in the State of Illinois. The Court went on to find that a teacher strike was in progress and that the strike, coupled with the picketing, interrupted the operation of the schools within the Decatur school system and caused "immediate and irreparable damage to the public." The Court then ordered the individual defendant teachers to desist from the strike that was currently in progress, and also to desist from "picketing or other conduct interferring with the usual, customary and normal operation of the schools". Finally, the temporary restraining order provided that the defendant teachers were to immediately return to their classrooms as of September 15, 1971, at the regular reporting time and perform their professional services.

On September 22, 1971, the Complaint for temporary injunction filed by the individual plaintiffs in this cause was consolidated with the previous declaratory judgment action filed by the Board of Education. Two days later, on September 24, 1971, both of these cases were consolidated with yet a third case filed by Dr. Michael Bakalis, the Superintendent of Public Instruction of the State of Illinois that was directed against the Board of Education and others. The nature of this particular lawsuit does not appear in this record. On the same day the defendants in this cause filed an Answer to the Complaint for temporary injunction and also moved to dismiss the temporary restraining order which had been previously issued by the Circuit Court.

The individual plaintiffs moved for a temporary injunction on September 24, 1971. On that date the plaintiffs appeared in Court by counsel and presented evidence in support of their motion. The defendants also appeared by counsel and presented certain evidence to the Court. The record discloses that counsel for the Board of Education was also present

at this hearing but declined to join in the hearing and question the various witnesses who testified for both sides. The plaintiffs called two witnesses in behalf of their motion. The first witness, Mr. Edwin Allen, was one of the plaintiffs and testified that he owned real estate in the City of Decatur and was the parent of children enrolled in the schools of Decatur School District No. 61. Mr. Allen further testified that he had observed various individuals picketing the schools and that his own children were denied the right to start school on August 25.

The second witness called by the plaintiffs was Mr. Robert Oakes, the Superintendent of Decatur School District No. 61. Mr. Oakes testified that by virtue of his office he was also the Secretary of the Board of Education. He stated that the Board of Education had established August 25, 1971, as the starting date for the 1971-1972 school term and that on that date approximately 573 school teachers failed to appear in their classrooms. Finally, Mr. Oakes indicated that if a majority of the teachers chose to withhold their services the Board of Education could not maintain an orderly school system. The sole witness called by the defendants was Mr. Joe Splendoria, the Assistant Director of the Division of Audits, of the Office of Superintendent of Public Instruction. Through Mr. Splendoria the defendants attempted to establish that the School Board could have waited until October 6, 1971 to start the school year and still fulfill the requirement for a minimum school term set forth in Section 10—19 of the School Code. Ch. 122, sec. 10—19, Ill. Rev. Stat. 1971.

At the conclusion of the evidence presented by the parties on the plaintiff's Motion for a Temporary Injunction, the Court entered an Order granting a Temporary Injunction fashioned in much the same terms as the temporary restraining order that had been issued ten days earlier. Once again, the Court found that the defendant teachers were public employees and were prohibited from engaging in a strike. The Court also found that the teachers were engaged in a strike and that the strike, coupled with their picketing, interrupted the operation of schools in the Decatur School System causing "immediate and irreparable damage to the public". The order further provided that:

"(1) The defendants in Cause No. 71-MR-22 are ordered to desist from any further unlawful striking and from picketing or other conduct interferring with the usual, customary and normal operation of the schools;

(2) That the said defendant teachers return to the class room at regular reporting time and perform their professional services as teachers.

(3) That bond is waived as matter is of recognized public interest.

(4) This Temporary Injunction is entered this 24th day of September, A.D. 1971, and shall remain in effect until further Order of Court."

A Motion to Dissolve the temporary injunction was filed by the defendants on October 8, 1971, and heard on the same day. This motion was denied. It is the denial of this motion from which defendants appeal. In asserting that the trial court erroneously denied their motion to dissolve the temporary injunction, the defendants have raised a plethora of issues. A careful examination of the various arguments set forth by the defendants reveals only four questions which merit serious consideration on this appeal. First, the defendants have asserted that the individual plaintiffs lack standing to seek injunctive relief. Second, they maintain that at the time the temporary injunction was issued there was no contractual relationship in existence between the individual teachers and the Board of Education. Third, they argue that the plaintiffs failed to prove that the teachers were engaged in an illegal strike and, finally, they insist that the injunction issued by the Circuit Court was forbidden by the terms of the Illinois Anti-Injunction Act found in ch. 48, sec. 2a, Ill. Rev. Stat., 1971.

The first issue that requires decision is the question of standing. In their Motion to Vacate filed in the trial court, and in their Brief to this Court the defendants have maintained that the plaintiff taxpayers failed to allege in their complaint that they would suffer any special damages different in degree and kind from that suffered by the public at large and, therefore, had no standing to seek injunctive relief. In support of this contention, defendants have relied upon the decision of the Court in *Droste v. Kerner* (1966), 34 Ill.2d 495, 217 N.E.2d 73. However, in *Paepcke v. Public Building Com.* (1970), 46 Ill.2d 330, 341, 263 N.E.2d 11, the Supreme Court specifically overruled its decision in *Droste,* on the question of standing, with the following language:

"Upon serious reconsideration of this question we now believe that portion of the opinion in Droste dealing with the right and standing of the plaintiff to sue should be overruled, as should any other former decisions of this Court holding that a citizen and taxpayer has no right, in the absence of statute, to bring an action to enforce the trust upon which public property is held unless he is able to allege and prove special damage to his property. If the "public trust" doctrine is to have any meaning or vitality at all, the members of the public, at least taxpayers who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often an effectual denial of the right for all time."

The plaintiffs in *Paepcke* were taxpayers, residents and property

owners of the City of Chicago who sought to prevent certain public bodies and agencies from constructing two schools on a portion of the property occupied by two municipal parks, contending that the parks were held in "public trust for use only as park or recreational grounds". (*Paepcke v. Public Building Com.* (1970), 46 Ill.2d 330, 335, 263 N.E.2d 11.) The Court, while holding that the plaintiffs had standing to sue, affirmed the dismissal of their complaint. Thus, *Paepcke* dealt with taxpayers who were seeking to impose a trust on certain public land.

The plaintiff in *Droste* filed two complaints attacking the validity of a transfer of public land by the State to the United States Steel Corporation. Again, the "public trust" theory was advanced by the plaintiff to support standing to sue. As we have noted, the majority of the Court held that absent a specific showing of special damage to the plaintiff's property he had no standing to initiate the lawsuit. A dissenting opinion was filed by Justice Shaeffer in which he commented:

"The taxpayer's right to sue does not, however, depend upon any injury to his property. Indeed, he need not be an owner of real property. His right to sue is grounded upon his status as a taxpayer, as it is his equitable interest, as a taxpayer, in the public property which is being illegally disposed of that determined his standing to maintain the action." *Droste v. Kerner* (1966), 34 Ill.2d 495, 511, 217 N.E.2d 73.

This language was later approved by the Court in *Paepcke* in overruling *Droste. Paepcke v. Public Building Com.* (1970), 46 Ill.2d 330, 341, 263 N.E.2d 11.

However, reliance upon the Court's holding in *Paepcke* does not specifically answer the question posed by the case at bar, since *Paepcke* and the decisions cited in the dissent in *Droste*, all dealt with the concept of "public trust", a theory that is premised upon an alleged misuse of public property or funds. Here, the issue is whether or not taxpayers who have children in the public schools can maintain an action for injunctive relief grounded upon the duty of the State to maintain a free, efficient and high quality system of public education. We are not faced with an alleged misuse of public funds or conveyance of public property. We are concerned with the constitutionally mandated duty of the State to maintain a public school system. Can taxpayer-parents sue to enjoin a teachers strike in order to secure the performance of that constitutional duty under the facts presented by this record? We hold that they cannot.

■■ The Illinois Constitution provides that "a fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities" and that "the State shall provide for an efficient system of high quality public educational institutions and serv-

ices." (Ill. Const., Art. X, Sec. 1.) Hence, the State has a constitutional duty to provide and the public has a right to receive an efficient, high quality educational system. This duty is discharged by the State through local boards of education who are primarily responsible for fulfilling this constitutional mandate.

■■ The parties to this appeal have not cited, nor has our research disclosed, any precedent which would confer standing upon individual taxpayer-parents under the situation presented by the facts of this case. We hold that in the circumstances present here, the authority to seek an injunction rests in the State and its official representative, the Board of Education, the members of which are elected by the people to implement the command of the constitution. Any other decision would have the effect of usurping the Board of Education's control of the local educational system. Control of that system, and the manner in which the constitutional mandate for a free and efficient system of public instruction is carried out must, of necessity, rest solely with the Board of Education. This principal was recognized by the Supreme Court in *Board of Education v. Redding* (1965), 32 Ill.2d 567, 573, 207 N.E.2d 427, where the Court, in holding that a strike by custodial employees of a school board was illegal, remarked as follows:

"We detect in defendants' arguments a suggestion that legal sanction should be given to the strike in this case because the striking employees offered to perform essential sanitary services, because the union has given deliverymen permission to cross the picket line, and because those individuals who still refuse to cross the picket line do so of their own volition rather than through active coercion on the part of defendants. These circumstances, however, can be of little consequence, for the fact remains that an important governmental function is nonetheless still being impeded and adversely affected as a result of the strike. *What is more, to be thorough and efficient, school operations cannot depend upon the choice or whim of its employees, or their union, or others, but must necessarily be controlled only by duly constituted and qualified school officials.*" (Emphasis supplied.)

See also, *City of Rockford v. Local No. 413 International Association of Firefighters* (Second District, 1968), 98 Ill.App.2d 36, 40, 240 N.E.2d 705, where the Court held that a strike by firemen was properly enjoined despite the contentions of the striking firemen that crucial services were performed on an adequate, albeit partial basis. To accept these contentions, the Court noted would be to permit the striking firemen to control the actions of the city fire department.

The effect of conferring standing upon individual taxpayer-parents to seek an injunction in a case of this nature is ascertainable even in the

present case. Here the Board of Education had already instituted legal action to declare that the defendants no longer occupied any contractual relationship with the School Board due to their alleged illegal strike. The suit instituted by the plaintiffs in this case, however, sought the *opposite* objective—namely, to determine that the defendants were in fact still under a contractual relationship with the School Board and, therefore, should be ordered to return to their posts. If standing were conferred upon parents of school children in a case such as this one could conjure up a multitude of situations in which the desires of a few individual parents could conflict with the action of the School Board. While we recognize that parents have an abiding and legitimate concern in the outcome of a dispute such as the one presented by this appeal, we do not feel that the interest is the equivalent of, or bestows legal standing to sue. Accordingly, the cause appealed from must be reversed and remanded to the Circuit Court of Macon County with directions to enter an order dismissing the Temporary Injunction Order, and also the Complaint for Injunction filed by the individual plaintiffs.

The Court cannot help but note the increasing frequency of strikes by public employees and, particularly, strikes by public school teachers.[1] With this in mind, we feel compelled to comment upon the other major issues raised by the defendants in this appeal despite the fact that this appeal is disposed of by the holding already indicated.

No evidence was presented on the question, nor did the injunction order entered in the trial court, make any distinction in its application between tenured and non-tenured teachers.

■■ However, defendants' assertion that there was no contractural relationship between them and the Board of Education is without merit with respect to those teachers who were on tenure under the provisions of ch. 122, sec. 24—1, Ill. Rev. Stat. (1971). Those teachers who had attained tenure under the provisions of sec. 24—11 of the School Code were under contractual continued service with the Board of Education and could only terminate that relationship by complying with the provisions of sec. 24—14 of the School Code by giving the Board of Education written notice of such termination within the time period specified therein. Ch. 122, sec. 24—14, Ill. Rev. Stat. (1971).

■■ The purpose of the tenure provisions of the School Code was ex-

---

[1] See *e.g.*, the excellent compilation of cases and source material dealing with strikes by public school teachers in Note, *Teacher's Strikes—a new militancy,* 43 Notre Dame Lawyer, 367 (1968). See also, Shaw & Clark, *The Need for Public Employee Labor Legislation in Illinois,* 59 Ill. Bar J. 628 (April, 1971), for a comprehensive and thoughtful discussion of the problems involved with public employee legislation.

plained by the Supreme Court in *Donahoo v. Board of Education* (1953), 413 Ill. 422, 425, 109 N.E.2d 787, where the Court noted that "the Teacher Tenure Law was enacted primarily for the protection of Illinois teachers who, prior to its enactment in 1941, served at the pleasure of Boards of Directors or Education. Its object was to improve Illinois School System by assuring teachers of experience and ability continuous service and a rehiring based upon merit rather than failure to rehire upon reasons that are political, partisan or capricious." See also, *Pickering v. Board of Education* (1967), 36 Ill.2d 568, 577, 225 N.E.2d 1. The Courts have further held that the provisions of the School Code with respect to tenure create an automatic contract by operation of law between the school board and the tenured teacher, (*Donahoo v. Board of Education* (1953), 413 Ill. 422, 427, 109 N.E.2d 787; *Pearson v. Board of Education* (3rd Dist., 1956), 12 Ill.App.2d 70, 73, 138 N.E.2d 687; *Lester v. Board of Education School District No. 119* (2nd Dist., 1967), 87 Ill.App.2d 269, 280, 230 N.E.2d 893), and that where a tenured teacher does not enter into a specific written contract with the Board of Education that employed him for the previous school year, then he is deemed automatically to be under continued contractual service for the same terms and conditions and rate of pay that were set forth in his contract for the previous year, *Donahoo v. Board of Education* (1953), 413 Ill. 422, 427, 109 N.E.2d 787.

■■ The defendants have also contended on this appeal that the plaintiffs failed to show that a strike was in fact in progress. The brief summary of the relevant facts previously set forth in this opinion showed that the Board of Education had established August 25, 1971, as the opening day of school in the Decatur School System, and that on that date some 573 teachers failed to report to their classrooms. Furthermore the evidence revealed that there were pickets in front of the various schools, and that the majority of the children in the Decatur School System were unable to attend classes on the opening day of school due to the fact that the defendant teachers had failed to report for work. Under these circumstances, we must concur with the *amicus curiae* brief filed by the Board of Education that a rose by any name is still a rose, and that a strike was in fact in progress by the defendant teachers. *Board of Education v. Redding* (1965), 32 Ill.2d 567, 207 N.E.2d 427; *City of Rockford v. Local No. 413 International Association of Firefighters* (2nd Dist., 1968), 98 Ill.App.2d 36, 240 N.E.2d 705.

■■ The final argument raised by the defendants was that the Injunction in question was prohibited by the terms of the Illinois Anti-Injunction Act, ch. 48, sec. 2a, Ill. Rev. Stat. (1971). While they acknowledge that the Illinois Supreme Court has indicated that strikes by public school

teachers are illegal in the case of *Board of Education v. Redding* (1965), 32 Ill.2d 567, 207 N.E.2d 427, they assert that the Court did not consider the effect of the Anti-Injunction Act in *Redding* and by its later decisions in *Peters v. South Chicago Community Hospital*, 44 Ill.2d 22, 253 N.E.2d 375 and *County of Peoria v. Benedict*, 47 Ill.2d 166, 265 N.E.2d 141, *cert. den.* (1970), 402 U.S. 929, the Supreme Court of Illinois overruled by implication its holding in *Redding*. This contention is also unsound. In *Redding* the Supreme Court held that custodial employees of a public school could not engage in a strike against a local school board. The Court noted that the Illinois Constitution imposed a duty upon the State to provide an efficient and free public school system and that any individual who implemented that constitutional provision became an agent "to fulfill the will of the people in such respect" and "are themselves charged with a duty to refrain from conduct which will render our schools less efficient and thorough." (*Board of Education v. Redding* (1965), 32 Ill.2d 567, 572, 207 N.E.2d 427.) Although *Redding* did not involve public school teachers it is obvious that the decision therein announced would apply to them as well.

In two cases decided by the Supreme Court since the date of the *Redding* decision, the Court has indicated that the provisions of the Anti-Injunction Act prohibits the issuance of an injunction against some classes of employees that may be deemed "public". Thus, in *Peters v. South Chicago Community Hospital*, 44 Ill.2d 22, 253 N.E.2d 375, the Court held that the provisions of the Anti-Injunction Act prevailed to prohibit an injunction against a strike staged by employees of a not for profit hospital. One year later, in *County of Peoria v. Benedict*, 47 Ill.2d 166, 265 N.E.2d 141, *cert. den.* (1970), 402 U.S. 929, the Court held that the Anti-Injunction Act also prohibited the issuance of an injunction against a strike by employees of a county nursing home. The effect of these two decisions, defendants urge, has been to erode and overrule, by implication, the decision of the Supreme Court in *Redding*. However, an analysis of the Court's decision in *Peters* discloses that *Redding* is still good law.

The trial court in *Peters* had entered an Order which, in effect, permitted the various defendants to organize a strike against two area hospitals. On appeal, the first district "held that a strike by hospital employees in the picketing of a hospital is against the public policy of this State when it impedes the operation of the hospital". (*Peters v. South Chicago Community Hospital*, 44 Ill.2d 22, 24, 253 N.E.2d 375.) The Appellate Court relied upon *Redding* in determining that the strike in *Peters* was violative of public policy. (*Peters v. South Chicago Community Hospital*, 107 Ill.App.2d 460, 466, 246 N.E.2d 840.) However, the

Supreme Court, in analyzing its decision in *Redding,* commented that the decision was based upon the "public policy" *that was mandated by the Illinois Constitution.* This is apparent from the language of the Court in *Peters* when it declared that:

"It is true that this Court in *Redding* (32 Ill.2d 567), held that the proper and efficient education of children is an overriding public interest of such importance as to transcend the right of custodial workers to strike or picket a public school. However, the public policy to 'provide a thorough and efficient system of free schools' is expressly stated in Section 1 of Article VIII of our constitution. (Ill. Const., art. VIII, sec. I.) Thus, it was not this Court that declared the public policy, as did the Appellate Court in this case, it was the constitution that declared the public policy *  *  *.

Unlike *Redding* there is no overriding expression of public policy here such as the constitutional mandate that the General Assembly shall 'provide a thorough and efficient system of free schools *  *  *.' Ill. Const. art. VIII, sec. I" *Peters v. South Chicago Community Hospital* (1969) 397 U.S. 1078, 44 Ill.2d 22, 26-27, 253 N.E.2d 375.

Hence, the decision enunciated by the Court in *Redding* is bottomed upon the constitutional duty to provide public schools, and the holding in *Redding* was reaffirmed by the Supreme Court in *Board of Education v. Kankakee Federation of Teachers,* 46 Ill.2d 439, 441, 264 N.E.2d 18. The implementation of this mandate is not subject to the provisions of the Anti-Injunction Act.

The order of the Circuit Court denying defendants' Motion to Vacate the temporary injunction is reversed, and the cause remanded with directions to set aside the temporary injunction and to dismiss Plaintiff's Complaint.

TRAPP, P. J., and CRAVEN, J., concur.