WILLIAM C. BECK, Plaintiff-Appellee, *v.* BOARD OF EDUCATION OF HARLEM CONSOLIDATED SCHOOL DISTRICT NO. 122, Defendant-Appellant.

(No. 73-354; )

Second District (2nd Division)—April 3, 1975.

John R. Kinley and Russell D. Anderson, both of Williams, McCarthy, Kinley, Rudy, & Picha, of Rockford, for appellant.

William L. Balsley, of Smith, Smith, & Balsley, of Loves Park, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Winnebago County, Illinois, which found that fees charged a parent for school supplies and materials furnished his children were not authorized by statute, which found that some of the items furnished were textbook materials which had to be given his children without charge because a free textbook proposal had been adopted by referendum, and which enjoined collection of the fees from him.

The plaintiff in this case, William H. Beck, is the father of four children who attend school in Harlem Consolidated School District No. 122, in Winnebago County. At the time he filed his complaint, one of his children was in the sixth grade, two were in the fifth grade, and one was in the fourth. The defendant, the Board of Education of Harlem Consolidated School District No. 122, had adopted a mandatory flat-rate fee schedule for certain materials and supplies furnished by the school district to students. The amount of the fee depended solely on the grade

in which the student was enrolled. It was $19.40 for a sixth-grade student and $14.00 for a fifth-grade or fourth-grade student.

The voters of the school district had voted in favor of furnishing free textbooks, at a referendum held in 1938 pursuant to section 28—14 of the School Code. (Ill. Rev. Stat, 1973, ch. 122, par. 28—14.) It thereafter was the obligation of the school board at the district's expense to provide pupils with "textbooks," under section 28—15 of the School Code. Ill. Rev. Stat. 1973, ch. 122, par. 28—15.

The plaintiff refused to pay the fees applicable to his children, and filed a complaint for a declaratory judgment and for an injunction. He alleged in his complaint that the school board lacked statutory authorization for its fees, that the free textbook referendum required the board to furnish "textbooks" without charge, and that the fees were in violation of the constitutional provision that education in the public schools through the secondary level was to be free. (Ill. Const. (1970) art. X, § 1.) Following a hearing at which stipulations and exhibits were presented but no testimony was given, the trial court ruled in favor of the plaintiff on the issues of statutory authorization and the scope of "textbooks," but found the charging of fees not unconstitutional. No appeal has been taken from that portion of the court's order dealing with the constitutionality of the fees, so that issue is not before us.

The school board has appealed from those portions of the trial court's order which held that the board had no express or implied power to charge fees for the supplies and materials it furnished, and that certain designated items had to be provided without charge because of their being "textbook materials" properly includible within the category of "textbooks" as the term was used in the free textbook statute, pursuant to which the school district's referendum was held. The school board maintains that statutory authorization to impose fees for furnishing supplies is given by implication by sections 10—20.5 and 10—20.8 of the School Code. (Ill. Rev. Stat. 1973, ch. 122, pars. 10—20.5, 10—20.8.) The former section allows school boards to "adopt and enforce all necessary rules for the management and government of the public schools of their district," and the latter allows them to "direct what branches of study shall be taught and what apparatus shall be used." The board maintains, further, that the term "textbooks" in the statute should be held to have a plain and narrow meaning. On the other hand, the plaintiff takes the position that authorization for school supply fees is not given by the cited sections or by any other, and that "textbooks" in context includes "textbook materials" as the trial court found.

It was stipulated by the parties that the items charged to the Beck children were those shown and described on lengthy lists. They include a hardcover dictionary, to be retained by the student, the student having

an option to purchase his own and have his fee reduced by $4.20; workbooks, with soft covers, in which the student was to write, they also to be retained by the student; magazine subscriptions; duplicating paper for materials distributed in class, and masters used in the duplicating; printed answer sheets; learning center supplies; file folders, for the student to keep; paper, paint, glue, modeling clay, chalk, pencils, and marking pens used and consumed in class; a lock, towels, scissors, and a compass to be kept by the school; atlases, pamphlets, and paperback books to be retained and used another year by the school; a map to be kept by the student; chemicals to be used in the laboratory; a worm, for the science class; sewing class supplies; cooking class food items; and materials used in industrial arts.

It was also stipulated that the prices shown opposite the items described on the lists were in some cases the cost to the school of items which were to be delivered to and kept by the particular student, and were in other cases an average cost per student of material to be consumed during the year or having a relatively short life; that the cost of the items to be furnished or allocated to the four Beck children amounted to $60.85, whereas the fees totaled $61.40; that these items were in addition to other basic supplies to be provided by a student's parents; and that for students whose parents were unable to pay the fees, fees were waived. Also, that the lists included padlocks, which were combination locks which could be opened with a master key, because under an agreement with the fire department the school had to be able to open all lockers in the event of a bomb scare; that giving aptitude tests to students was a desirable part of education, and the use of printed tests and answer sheets was the most economical way of giving such tests; and that the various workbooks were to be used as supplements to books which were the principal basis for study in the students' courses.

In addition to their stipulations, the parties introduced in evidence what they agreed were representative samples of some of the items which the stipulations mentioned. The samples included a paperback book on Asia, a pamphlet on economics, a softbound atlas, two mathematics workbooks, a reading workbook, and a spelling workbook. Also included were two textbooks used in the sixth grade social studies course as the principal basis of study. The two textbooks were not on any of the lists of items for which fees were charged, but were books which certain of those items were intended to supplement.

■■ It has long been recognized that schools can require parents to provide supplies for their children. In *Segar v. Board of Education*, 317 Ill. 418, 421 (1925), the Illinois Supreme Court said: "A system of schools which permits all persons of school age residing in the district

to attend classes and receive instruction in the subjects taught, without a tuition charge, provides free schools, and the fact that the parents of pupils financially able to do so are required to provide their children with textbooks, writing materials and other supplies required for the personal use of such pupils does not change the character of the school." The furnishing of such supplies was not considered to be part of the general cost of education which the schools had to bear.

In a recent case it was held by this court that a towel charge for the furnishing of clean towels throughout the school year was not illegal under the School Code. (*Hamer v. Board of Education*, 9 Ill.App.3d 663 (1973), *leave to appeal denied.*) In that case the charge was optional with the parent, who could provide his children with towels himself if he desired. But whether optional or otherwise, the basis for the arrangement was necessarily an implied power derived from general powers given by the School Code, there being no express authorization in the School Code for a school's providing students with towels or any other supplies for a charge on either a mandatory or a voluntary basis.

■■ Long ago the Illinois Supreme Court, in *Wilson v. Board of Education*, 233 Ill. 464, 470 (1908), interpreting a statutory provision applicable to Chicago but similar to section 10—20.5 of the School Code, declared: "The power of the board of education to control and manage the schools and to adopt rules and regulations necessary for that purpose is ample and full. The rules and by-laws necessary to a proper conduct and management of the schools are, and must necessarily be, left to the discretion of the board, and its acts will not be interfered with nor set aside by the courts unless there is a clear abuse of the power and discretion conferred." We take this to mean that a broad spectrum of implied incidental powers is to be inferred from the general power to adopt all necessary rules for the management and government of the schools, in order to allow the rule-making power to be "ample and full."

■■ Since a school board can require parents to send supplies with their children, can direct what "apparatus" shall be used, can make supplies available for a charge on a voluntary basis, and can exercise a rule-making power which is to be treated as "ample and full," we believe it must be held that a school board has an implied power to purchase supplies for the students and pass on the cost to their parents on a mandatory basis. Therefore the fees charged to the plaintiff's children in this case cannot be held invalid on the basis that the defendant school board lacked statutory authorization for its charges.

The question remains whether some of the supplies and materials provided the plaintiff's children for a fee had to be given to them without charge because of the free textbook referendum. The plaintiff argues that the trial court correctly found that the term "textbook," as it was

used in the free textbook sections of the School Code (Ill. Rev. Stat. 1973, ch. 122, pars. 28—14 to 28—17), included the following: workbooks, duplicating paper and masters, magazine subscriptions, dictionaries, paperback books, maps, and atlases. The school board argues for a narrower meaning.

Both parties refer us to *People ex rel. Mack v. Board of Education,* 175 Ill. 9 (1898). That case held penmanship books to be textbooks within the meaning of another section of the School Code (an earlier version of the present section). The opinion does not tell us whether students were to write in the books, and whether they were thus like workbooks. The case does not appear to be of material help to either side, nor do the various other sections of the School Code, as amended from time to time, which both parties cite to reach contradictory conclusions.

■■ It is well established that in the absence of a contrary statutory definition, a word used in a statute is to have its popularly understood meaning (*Bowman v. Armour & Co.,* (1959), 17 Ill.2d 43, 52), or commonly accepted dictionary interpretation. (*Husser v. Fouth* (1944), 386 Ill. 188, 194.) Webster's New International Dictionary (2d ed. 1934) defines a textbook as "a book containing a presentation of the principles of a subject, intended to be studied by the pupil and used as a basis of instruction by the teacher." The word is popularly understood to describe a *book,* rather than anything of lesser substantiality or permanence, which *expounds* the principles of a field of knowledge, rather than merely presenting exercises or questions, and which is used as the *basis* of a course of study, and not as a general reference work or a reference work on a subsidiary topic.

■■ A map, we believe is not ordinarily considered to be a textbook, nor is a collection of maps in an atlas, nor is a dictionary, nor is a "Weekly Reader" magazine, nor is a sheet of paper or a collection of loose sheets of paper. The workbooks containing problems and exercises and the pamphlet on selected subjects are also ordinarily considered, we believe, to be not textbooks but just supplementary materials, or teaching aids; it was stipulated that they were used to supplement books which were the standard work or basis for instruction in the particular area. We cannot find that any of the disputed items are "textbooks," the cost of which could not be included in the fee charged to the plaintiff's children.

For the reasons stated, the order of the Circuit Court of Winnebago County is reversed.

Order reversed.

RECHENMACHER, P. J., and T. MORAN, J., concur.