SANDRA LITTRELL et al., Plaintiffs-Appellants, v. THE BOARD OF EDUCATION OF CAVE-IN-ROCK COMMUNITY UNIT SCHOOL DISTRICT NO. 2, Defendant-Appellee.

Fifth District   No. 76-397

Opinion filed February 4, 1977.

Drach, Terrell and Deffenbaugh, P. C., of Springfield, for appellants.

James W. Sanders, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiffs-appellants Sandra Littrell and Robert Spivey, tenured teachers employed by defendant-appellee, the Board of Education of

Cave-in-Rock Community Unit School District No. 2 (hereinafter Board), sued for a declaratory judgment in the Circuit Court of Hardin County that they were entitled to be paid for the school year 1974-75 on the basis of the salary schedule adopted by the Board on July 8, 1974. After hearing evidence including extensive stipulations of facts by the parties, the court entered judgment for defendant. Plaintiffs then perfected this appeal.

The facts, which are in relevant part undisputed, may be briefly stated. On July 8, 1974, the Board adopted a salary schedule for the coming school year. On August 19, the first day of the 1974-75 term, a teachers' workshop was held. At that time the superintendent of schools distributed contracts to the teachers for their signatures. Unlike contracts prepared in previous years, which had indicated the teacher's salary by the phrase "as per salary schedule," these contracts for 1974-75 contained a dollar amount, based on years' experience and educational level achieved, according to the schedule that had been adopted by the Board. For Ms. Littrell, the scheduled amount was $9,000; for Mr. Spivey, $9,400. Plaintiffs did not sign the contracts. Ms. Littrell testified that they elected not to sign because they did not want to be met with the argument that they had already signed a written contract when they later attempted to negotiate a raise. The superintendent informed the tenured teachers, both orally on August 19 and by letter dated September 10, that they were not required by law to sign the contracts, but if they did not sign, they would be paid according to the terms of the previous year's contracts. Plaintiffs performed all duties required of them by the Board during the school year 1974-75, but were paid according to the 1973-74 salary schedule. Each received $415 less than other teachers with identical experience and education who did sign the contracts.

The issue for our determination is whether the plaintiffs' refusal to sign the contracts presented to them on the first day of the school term justified the Board of Education in withholding from them the pay raise given to the other tenured teachers. Put another way, could the plaintiffs be required on August 19 to sign contracts as a prerequisite to their obtaining the salaries called for by the schedule already approved by the Board on July 8?

■■ Plaintiffs contend that the action of the Board in paying them less than their colleagues who signed contracts was arbitrary and based upon an unreasonable classification. They call our attention to the case of *Richards v. Board of Education*, 21 Ill. 2d 104, 171 N.E.2d 37 (1960). There, in reaching the conclusion that professional growth is a proper element to be considered in fixing a teacher's compensation, our supreme court examined the School Code and said:

"From the language the legislature has employed, it is clear that

a school board has discretionary control over the salaries of its teachers, subject only to any limits expressly fixed by the School Code and to constitutional prohibitions against actions that are arbitrary, discriminatory and unreasonable, or based upon an improper classification." (21 Ill. 2d 104, 109, 171 N.E.2d 37, 41.) The legislative language to which the court referred included the following from what is now section 24—11 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 14—11):

" * * * Contractual continued service status [*i.e.,* tenure] shall not restrict the power of the board * * * to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing * * *."

Uniformity is not violated, added the court, by a classification "which is reasonable, natural and based on substantial differences germane to the subject." (21 Ill. 2d 104, 110, 171 N.E.2d 37, 42.) In effect, plaintiffs here are arguing that the Board made reductions in their salaries within the meaning of the School Code after they declined to sign contracts, and that classifying tenured teachers for salary purposes on the basis of whether or not they sign contracts presented to them after the school year has begun is arbitrary and unreasonable.[1]

Defendant responds that there is nothing arbitrary, capricious, nor unreasonable about basing salary distinctions upon teachers' signing or refusing to sign new contracts. In support of its position, the Board cites *Davis v. Board of Education,* 19 Ill. App. 3d 644, 312 N.E.2d 335 (2d Dist. 1974), a case which it sees as "factually almost identical" to the instant one. *Davis* was also an appeal by tenured teachers who had not signed new contracts from a denial of their request for a declaratory judgment that they were entitled to salaries equal to those teachers who had signed. The contracts there involved, in addition to providing for increases in salaries and other benefits, contained the provision that the teachers

---

[1]Additionally, plaintiffs argue that the failure of the Board to present the contracts to them until after the time had passed within which they, as tenured teachers, might resign without incurring potential disciplinary action for unprofessional conduct equitably estops the Board from denying them the benefits of the new salary schedule. We must, however, reject this contention, as we do not think that all the elements of equitable estoppel are present here. Plaintiffs could not be said to have relied to their detriment on the salary schedule for 1974-75 by not terminating their employment, as the schedule was not adopted by the Board until July 8, 1974. Section 24—14 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—14) provides that a tenured teacher must give the Board at least 61 days' notice that he or she does not intend to teach in the coming school term. Here, August 19 was the first day of the 1974-75 term. Thus the salary schedule was not adopted until some 18 days *after* the statutory deadline for termination. Reliance is an essential element of equitable estoppel. See, *e.g., Atwater v. Atwater,* 18 Ill. App. 3d 202, 210, 309 N.E.2d 632, 639 (1st Dist. 1974).

executing it "would not participate in a work stoppage, withholding of services, or strike."[2] In affirming the denial of declaratory relief,[3] the Appellate Court for the Second District said:

"While the law does not require tenured teachers to sign a new contract, it has also established that in Illinois a Board may enter into new contracts of employment with tenured teachers. (*Donahoo v. Board of Education*, 413 Ill. 422, 427 [109 N.E.2d 787, 789-90] (1952).) The effect of each of these alternatives is distinct: Under the first, the 'unsigned' tenured teacher continues, automatically, under the terms and conditions contained in the previous year's contract (*Allen v. Maurer*, 6 Ill. App. 3d 633, 642 [286 N.E.2d 135, 141] ([4th Dist.] 1972)), whereas in the second instance, the 'signed' tenured teacher may rely upon the terms and conditions of the new contract.

Here, the central issue is whether the salary distinction, based upon the teachers' signing or refusing to sign a new contract, is arbitrary, capricious or unreasonable. The Board treated all teachers equally, giving each the option of receiving the increased benefits by signing the new contract. Tenured teachers could neither be required to sign nor could they be removed for their failure to do so. The option of signing was that of the teachers. Plaintiffs opted not to sign and now receive less pay than those tenured teachers who executed the new contract. We do not find this to be arbitrary, capricious or unreasonable.

Parenthetically, we note that it would be basically unfair to apply the benefits of the new contract to those who refused to sign when they, by refusing, declined to obligate themselves to the terms and conditions imposed upon those who did sign.

Plaintiffs maintain that the Board may not refuse to pay a teacher an amount prescribed in the salary schedule adopted for the school year despite the fact that the schedule was attached to the contract which plaintiffs refused to sign because of other matters therein. We find two salary schedules in effect for the 1971-72 school year; the schedule under the new contract and the schedule under the previous contract. The current schedule applied only to those teachers who signed the new contract; the previous schedule was

---

[2] We note parenthetically that we cannot understand how such a contractual provision, by which one of the parties agrees not to do what he is already bound by law not to do, could serve as valid consideration. It is unlawful for public employees to strike in the State of Illinois. See *City of Pana v. Crowe*, 57 Ill. 2d 547, 316 N.E.2d 513 (1974), and authorities cited therein.

[3] The judgment was reversed to the extent that the lower court had held that plaintiffs were not entitled to a salary increment for an additional year's experience. Such an increment is not in issue here, as defendant agrees that plaintiffs are entitled to it.

applicable to those tenured teachers who refused to sign the new contract but returned to work. Such intent is clearly manifested within the Board's letter of July 29, 1971, and having by their actions accepted the Board's option 'B' therein, plaintiffs cannot now claim a right to a salary provided for within a contract they did not sign. A distinction in salary based on the signing or failure to sign a new contract is legally effective. In *Donahoo v. Board of Education,* 413 Ill. 422, 427 [109 N.E.2d 787, 789-90] (1953), the court stated:

> 'The Teacher Tenure Law does not make it mandatory upon the teacher to either accept or reject. Of course, if an offer was properly made and unconditionally accepted, it would be in force according to its terms, but if not accepted or conditionally accepted, then the provisions of the Teacher Tenure Law apply.' "

19 Ill. App. 3d 644, 645-46, 312 N.E.2d 335, 336-37.

We have examined the opinions in *Donahoo* and *Allen,* and do not find them to be authority for the proposition that the law recognizes the validity of distinctions in salary based solely on tenured teachers' signing or failing to sign new contracts. In *Donahoo,* the question for decision was whether, under the provisions of what is now section 24—11 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—11), the notice of dismissal given a probationary teacher must state the specific reason therefor. The court held that the language of the statute was mandatory, not directory only, and that because the probationary teacher did not receive timely written notice stating the specific reason for dismissal, he acquired tenure on completion of the probationary period of two school terms. The language relied on here by defendant Board, and quoted in *Davis,* appeared in the following context:

> "The defendants argue at some length that the plaintiff failed to accept the terms of a contract tendered to him, and cite cases in support of the universally recognized rule that the acceptance of an offer on terms varying from those offered constitutes a rejection. It is obvious that there was not a meeting of the minds and that the acceptance was at variance with the offer. Such an argument presupposes that there had to be an unconditional acceptance of a contract, if properly tendered.
>
> That question does not enter into this case. The Teacher Tenure Law does not make it mandatory upon the teacher to either accept or reject. Of course, if an offer was properly made and unconditionally accepted, it would be in force according to its terms, but if not accepted or conditionally accepted, then the provisions of the Teacher Tenure Law apply. Section 24—2 [now

24—11] provides in part, 'Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term *of the probationary period.*' [Emphasis added.] Since it is agreed by the parties, and apparent from the record, that there was no new contract, plaintiff's employment continued under the terms and conditions of the contract for the 1949-1950 school term * * *." 413 Ill. 422, 427, 109 N.E.2d 787, 789-90.

The *Allen* case was a taxpayers' suit seeking an injunction requiring striking teachers to return to work. The court below had granted a temporary injunction. Defendant teachers then pursued an interlocutory appeal from the court's denial of their motion to dissolve the temporary injunction. The Appellate Court for the Fourth District held that taxpayers with children in the public schools lacked standing to maintain an action for injunctive relief grounded on the duty of the State to maintain an educational system, and therefore reversed and remanded with directions that the circuit court dismiss both the order for a temporary injunction and the taxpayers' complaint. The appellate court then said that it felt "compelled to comment upon the other major issues raised by the defendants in this appeal despite the fact that this appeal is disposed of by the holding already indicated." (6 Ill. App. 3d 633, 641, 286 N.E.2d 135, 141.) The court then went on to say, in what was confessedly *dicta,* that the contention of the tenured teachers that there was no contractual relationship between them and the school board was without merit because of the tenure provisions of the School Code, and that:

" * * * where a tenured teacher does not enter into a specific written contract with the Board of Education that employed him for the previous school year, then he is deemed automatically to be under continued contractual service for the same terms and conditions and rate of pay that were set forth in his contract for the previous year, *Donahoo v. Board of Education* (1953), 413 Ill. 422, 427, 109 N.E.2d 787." (6 Ill. App. 3d 633, 642, 286 N.E.2d 135, 141.)

But *Donahoo* does not stand for the proposition for which it is cited. The court there was dealing with a *probationary,* that is, *nontenured* teacher. Nor does section 24—11 provide as *Allen* indicates, except as to a teacher who has not received notice of dismissal at the end of his probationary period.

Because we do not find that the result reached by our sister court in *Davis* was either compelled by precedent or contemplated by the statutory scheme set out in the School Code, we do not feel obliged to follow it. It can be distinguished on its facts from the instant case in

certain respects, in that the contracts there contained a "no-strike" provision (see footnote 2 above and accompanying text) and was submitted to the teachers more than 60 days prior to the beginning of the school term. Here, there was no such provision, and the contracts were not presented to the teachers until the first day of school.

■■■ There was one provision not related to salaries or benefits in the contracts for 1974-75, which required that each teacher prepare "developmental learner objectives (DLO's)" for each of his or her classes. Apparently these written statements were required of each district by the State Superintendent of Public Instruction, but there was some controversy concerning who within the school system was to prepare them. The Cave-in-Rock superintendent of schools testified that he recommended to the Board at its July 8 meeting that the provision be included in the contracts, because of a "misunderstanding" on the part of the teachers, who thought that the school administration should prepare them. The president of the Board confirmed the superintendent's testimony. No mention of DLO's, however, was made in the minutes of the July 8 meeting. Further, it is undisputed that both plaintiffs did prepare DLO's for their classes. As plaintiffs pointed out during oral argument, it has been held that school authorities may assign teachers to supervise nonacademic school activities outside of school hours. As long as such assignments are reasonably related to teaching duties and not unduly time-consuming or burdensome, school authorities may, in the exercise of their sound discretion, require teachers to perform them without violating any provision of the School Code. (*District 300 Education Association v. Board of Education*, 31 Ill. App. 3d 550, 334 N.E.2d 165 (2d Dist. 1975).) A broad spectrum of implied incidental powers is to be inferred from the general power of boards of education to adopt all necessary rules for the management and government of the schools. (*Beck v. Board of Education*, 27 Ill. App. 3d 4, 325 N.E.2d 640 (2d Dist. 1975); see also Ill. Rev. Stat. 1973, ch. 122, par. 10—20.5.) We agree with the opinion expressed by plaintiffs' counsel at oral argument that it would have been well within the discretion of the school authorities to adopt a rule requiring teachers to write the "developmental learner objectives" required by the Superintendent of Public Instruction, whether or not such a provision was contained in a written contract. See also Ill. Rev. Stat. 1973, ch. 122, pars. 3—14.5 through 3—14.7, and 3—15.8.

Because of our view of this provision, we must reject the Board's argument, based on *Davis*, that "plaintiffs cannot expect to reap the additional monetary benefits provided for under the new 1974-1975 contract without obligating themselves, by the execution of the contract, to perform those terms and conditions imposed upon those who did sign."

Had they executed the contracts, plaintiffs would not have bound themselves to do any more than they were already obliged to do, nor than they did in fact do.

■■ The precise role of the law of contracts in the context of the elaborate statutory scheme of the School Code has not been clearly defined. It has been said that the effect of the Code's teacher tenure provisions is to create a contract by operation of law, and that those provisions must be read into any written contract between a school board and tenured teachers. (See, *e.g.*, *Pearson v. Board of Education*, 12 Ill. App. 2d 70, 138 N.E.2d 687 (3d Dist. 1956).) A school board may not, through a collective bargaining agreement or otherwise, either delegate to another or limit the discretionary powers vested in it by statute. (*Illinois Education Association Local Community High School District 218 v. Board of Education*, 62 Ill. 2d 127, 340 N.E.2d 7 (1976), *rev'g* 23 Ill. App. 3d 649, 320 N.E.2d 240 (1st Dist. 1974); *Elder v. Board of Education*, 60 Ill. App. 2d 56, 208 N.E.2d 423 (1st Dist. 1965); *Board of Education v. Rockford Education Association, Inc.*, 3 Ill. App. 3d 1090, 280 N.E.2d 286 (2d Dist. 1972).) In *Wesclin Education Association v. Board of Education*, 30 Ill. App. 3d 67, 331 N.E.2d 335 (5th Dist. 1975), we held that provisions of a collective bargaining agreement entered into by a school board which purported to bestow on nontenured teachers rights reserved by the School Code to tenured teachers were *ultra vires* and unenforceable, as contrary to public policy. The legal division of the office of the Superintendent of Public Instruction (now the State Superintendent of Education) has expressed the opinion[4] that all new contracts between tenured teachers and school boards are nullities:

> " * * * N.E. Hutson,[5] in an opinion on March 16, 1967, stated: 'No new contract with a tenure teacher is either necessary or legally enforceable. Such proposed contracts and requirements of the board simply confuse the teachers, the board members, and the general public. * * * You are therefore advised that boards of education may not and shall not issue new contracts to tenure teachers or may not or shall not take any action in effect requiring teachers to execute and return such contracts.'

This office concurs in that opinion." Opinion of Office of Superintendent of Public Instruction, July 23, 1971.

---

[4] Note that the School Code bestows on the Superintendent the power and the duty to supervise the public schools and to give opinions on questions arising under the school laws of the State. Ill. Rev. Stat. 1973, ch. 122, pars. 2—3.3, 2—3.7.

[5] Hutson, author of the introduction to the School Code of 1961 in the Smith-Hurd Annotated Statutes, was a consultant to the Illinois School Problems Commission and for a number of years served as legal counsel to the Superintendent of Public Instruction.

■■ We do not find it necessary in this case either to accept or to reject this opinion, as we agree with the plaintiffs that, on these facts, the action of the Board in paying them less than other tenured teachers of like experience and education for performing like duties simply because they did not execute the written contracts presented to them was arbitrary and based upon an unreasonable classification. The School Code expressly subjects the Board's power to fix the salaries of teachers to certain limitations, including the requirement that reductions in salary must be uniform or based upon some reasonable classification. (Ill. Rev. Stat. 1973, ch. 122, pars. 24—1 and 24—11; *Richards v. Board of Education;* see also Ill. Rev. Stat. 1973, ch. 122, par. 24—8.) As the Board recognizes in its brief, the General Assembly intended, in enacting the teacher tenure law, to protect qualified teachers. We have previously held that it must be construed consistently with this prime purpose. (*Graham v. Board of Education,* 15 Ill. App. 3d 1092, 305 N.E.2d 310 (5th Dist. 1973).) We therefore hold that the Board acted arbitrarily and unreasonably in reducing plaintiffs' salaries after the school year had begun. Thus the court below erred in denying the declaratory relief sought by plaintiffs, and its decision must be reversed.

Reversed.

CARTER, P. J., and EBERSPACHER, J., concur.