JAMES BAGLEY *et al.*, Plaintiffs-Appellees, *v.* BOARD OF EDUCATION OF
SENECA COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 170,
Defendant-Appellant.

Third District   No. 79-225

Opinion filed April 29, 1980.

STENGEL, J., dissenting.

George Mueller, of Hoffman & Mueller, of Ottawa, for appellant.

Ralph H. Loewenstein, of Drach, Terrell & Deffenbaugh, P. C., of
Springfield, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This case involves an appeal from a judgment of the Circuit Court of
La Salle County in favor of the plaintiff school teachers, awarding them
the benefit of salary increases passed by the defendant school board for
the 1975-1976 academic year. For the reasons stated hereafter, we affirm.

The facts of this case are quite simple. In the spring of 1975, the
defendant, the board of education of Seneca Community Consolidated
School District No. 170, held a meeting and voted to increase the base
salary of tenured teachers from $8,500 to $9,000 for the upcoming school
year. Subsequently, individual teaching contracts were sent by mail to all
teachers. In a cover letter signed by the superintendent of Seneca Public
Schools, John Nolan, the teachers were informed that contracts were
being issued to all teachers "even though it has been suggested that
contracts are not necessary for teachers on tenure." On each of the
contracts an asterisk was placed by the salary figure, which was

referenced at the bottom of the contract with the following provision: "Pending final agreement regarding salaries between the teachers and the Board of Education, District No. 170, with reference to the minutes of the May 15th meeting."

The three plaintiffs, James Bagley, Kendra Olson, and Marcia Slaboch, all tenured teachers, refused to sign the individual contracts. On September 5, 1975, they received written notice from the defendant school board that they were to be paid on a base salary of $8,500. They were subsequently informed by Superintendent Nolan that they did not receive the benefit of the $500 base salary increase because they did not sign the individual contracts sent to them in the spring. The plaintiffs also did not receive an additional $250 increase in base salary which was given thereafter, in March 1976.

During the 1975-1976 academic year, the plaintiffs protested the defendant's refusal to increase their base salary. However, it is uncontradicted that during this time the plaintiffs carried out all of their assigned duties and performed all functions required of teachers by the school board. None of the plaintiffs, alleging that the refusal to increase their base pay amounted to a "reduction" in salary under section 24—11 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—11), sought a hearing pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—12). On October 28, 1977, the plaintiffs filed suit in the Circuit Court of La Salle County seeking to obtain the benefit of the base salary increases withheld from them due to their refusal to sign written employment contracts. On December 15, 1978, judgment was entered in favor of the plaintiffs.

The question before this court is whether the plaintiff tenured teachers' refusal to sign individual employment contracts submitted by the defendant school board justified the board in withholding from them the increases in base salary which were given to other tenured teachers who did sign individual contracts. There are two cases on point: *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, 312 N.E.2d 335, and *Littrell v. Board of Education* (1977), 45 Ill. App. 3d 690, 369 N.E.2d 102. Because these two cases reach contrary conclusions, each will be scrutinized in some detail, both factually and legally.

In *Davis*, the defendant school board, responding to a threat of a strike by the plaintiff school teachers, submitted a new contract to all of the teachers in the district. The new contract provided for an increase in salary and benefits, and also contained a provision assuring the board that a teacher who signed the contract would not participate in a strike or a work stoppage during the forthcoming school year. Subsequently, the school board mailed a letter to all teachers who had not signed the contract which stated, *inter alia*, that those yet unsigned teachers could

either sign the contract sent previously or return to work in the upcoming academic year without a contract, in which case the insurance benefits and salary terms would be the same as the preceding year. The plaintiffs who did not sign the individual contracts (and who, therefore, did not receive the salary increase) brought an action for declaratory judgment seeking to be paid a salary "equal to those of other teachers within the same district." 19 Ill. App. 3d 644, 312 N.E.2d 335.

The first issue the court dealt with was whether the salary distinction, based upon the signing or refusal to sign a new contract, was "arbitrary, capricious or unreasonable." (19 Ill. App. 3d 644, 646, 312 N.E.2d 335, 336). Although the *Davis* court does not reveal the source of this standard, it is likely to have been *Richards v. Board of Education* (1960), 21 Ill. 2d 104, 171 N.E.2d 37. In *Richards*, the supreme court stated that where the legislature empowers an administrative agency such as a school board to perform certain acts (*i.e.*, fix salaries), "courts will not interfere with the exercise of such powers, or substitute their discretion, unless the action of the * * * agency is palpably arbitrary, unreasonable, or capricious." (21 Ill. 2d 104, 110, 171 N.E.2d 37, 41.) The second district in *Davis* then stated:

> "The Board treated all teachers equally, giving each the option of receiving the increased benefits by signing the new contract. Tenured teachers could neither be required to sign nor could they be removed for their failure to do so. The option of signing was that of the teachers'. Plaintiffs opted not to sign and now receive less pay than those tenured teachers who executed the new contract. We do not find this to be arbitrary, capricious, or unreasonable.
>
> Parenthetically, we note that it would be basically unfair to apply the benefits of the new contract to those who refused to sign when they, by refusing, declined to obligate themselves to the terms and conditions imposed upon those who did sign." 19 Ill. App. 3d 644, 646, 312 N.E.2d 335, 336.

The *Davis* court then dealt with the plaintiff's second contention, which was that the board may not refuse to pay a teacher an amount prescribed in the salary schedule adopted for the school year, despite the fact that schedule was attached to the contract which the plaintiffs refused to sign. The court found, however, that there were *two* schedules in effect, one for those who signed the new contract, and the other (the previous year's salary schedule) for those who did not. The court stated that the board's intent to have two schedules was manifested in its follow-up letter to teachers who had not yet signed the new contract. "[H]aving by their actions accepted the Board's [second] option [which was to pay those teachers who did not sign new contracts according to the

previous year's salary schedule] * * *, plaintiffs cannot now claim a right to a salary provided for within a contract they did not sign. A distinction in salary based upon the signing or failure to sign a new contract is legally effective." 19 Ill. App. 3d 644, 646, 312 N.E.2d 335, 337.

The two main cases relied upon by the second district in *Davis* to find that a schoolteacher who refuses to sign a new contract may be paid on the previous year's salary were *Donahoo v. Board of Education* (1952), 413 Ill. 422, 109 N.E.2d 787, and *Allen v. Maurer* (1972), 6 Ill. App. 3d 633, 286 N.E.2d 135. In *Donahoo*, the plaintiff, a nontenured teacher, was notified in person that his salary for the forthcoming school year was to be increased by $50 pursuant to a new contract. However, after expressing dissatisfaction with the school board's proposal, he was informed by letter that his contract would not be renewed. The appellate court reversed the circuit court's issuance of a writ of *mandamus* against the school board which commanded employment of the plaintiff. On appeal to the supreme court, the issue addressed was whether the provision in section 24—2 of the teacher tenure law, requiring that the notice of dismissal state the reasons therefor, was mandatory or directory (Ill. Rev. Stat. 1951, ch. 122, par. 24—2 (now par. 24—11)). The court held that the provision was mandatory, and because no reasons for plaintiff's dismissal were contained in the notice, the plaintiff's employment was to continue. The next question, of course, was under which contract. The court stated that if the plaintiff had unconditionally accepted the contract, its terms would govern; however, where no contract offer was accepted, the terms of the old contract continue under section 24—2. The court quoted the following language from that section, "Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period." (413 Ill. 2d 422, 427, 109 N.E.2d 787, 790.) *Donahoo* was subsequently cited in *Allen* in support of the statement "that where a tenured teacher does not enter into a specific written contract with the Board of Education that employed him for the previous school year, then he is deemed automatically to be under continued contractual service for the same terms and conditions and rate of pay that were set forth in his contract for the previous year." 6 Ill. App. 3d 633, 642, 286 N.E.2d 135, 141.

The next case to deal with this particular issue was *Littrell*. In *Littrell*, the defendant school board adopted a salary schedule for the forthcoming 1974-1975 school year, and presented new contracts to all teachers on the first day of school. The two tenured-teacher plaintiffs refused to sign the contracts, even though the school superintendent twice informed them that a failure to sign the contracts would result in payment according to the terms of the previous year's contracts. Consequently they did not receive the salary increase.

On appeal, the fifth district had the benefit of *Davis*, as well as the cases relied upon therein for support, *Donahoo* and *Allen*. The court found the latter two cases "not * * * to be authority for the proposition that the law recognizes the validity of distinctions in salary based solely on tenured teachers' signing or failing to sign new contracts." (45 Ill. App. 3d 690, 695.) The court pointed out that the section of the teacher tenure act relied upon in *Donahoo* (section 24—2 (now section 24—11)) specifically concerns nontenured or probationary teachers, and consequently *Allen's* reliance upon it in regard to tenured teachers is simply incorrect. "Because we do not find that the result reached by our sister court in *Davis* was either compelled by precedent or contemplated by the statutory scheme set out in the School Code, we do not feel obliged to follow it." (45 Ill. App. 3d 690, 696.) Finding that had the plaintiffs executed contracts they would not have bound themselves to do any more than they were already obliged to do, and noting that the legal division of the office of the Superintendent of Public Instruction stated in 1971 that all new contracts between tenured teachers and school boards were nullities, the *Littrell* court held that "the action of the Board in paying [the plaintiffs] * * * less than other tenured teachers of like experience and education for performing like duties simply because they did not execute written contracts presented to them was arbitrary and based upon an unreasonable classification." (45 Ill. App. 3d 690, 699.) The fifth district recently reaffirmed *Littrell* in *Bond v. Board of Education* (1979), 71 Ill. App. 3d 1115, 392 N.E.2d 1389 (Rule 23), *appeal allowed* (1979), 79 Ill. 2d 609.

On the basis of our examination of *Davis* and *Littrell*, we believe that the *Littrell* case states the better law. We agree with the fifth district that there is no legal precedent to support the *Davis* court's holding that tenured teachers who refuse to sign individual contracts continue under and are bound by the terms and conditions of the previous year's contract. *Donahoo* certainly does not stand for that proposition, as that case deals with a nontenured teacher whose salary in the absence of a written contract was found by the supreme court to be governed by the provisions of the contract with that teacher during the last school term of the probationary period. (Ill. Rev. Stat. 1975, ch. 122, par. 24—11). As a result, the *Allen* court's reliance upon *Donahoo* in stating that tenured teachers who do not sign written contracts continue employment under the previous year's contract is misplaced.

The inapplicability of *Donahoo* and the misreading of the *Donahoo* holding in *Allen* leads to the conclusion that if *Davis* is to be considered at all persuasive it must be for its reasoning rather than for its legal underpinnings. The *Davis* court did not consider the withholding of the salary increase from the plaintiff schoolteachers to be arbitrary, unreasonable,

or capricious because the teachers were given the option of signing the individual contracts and knew the consequences of their refusal to sign. Here, however, the plaintiffs were unaware at the time they received the individual contracts that their refusal to sign would result in their base salary not being increased. It is unreasonable to withhold the salary increases from the plaintiffs here on the ground that by their refusal to sign they knowingly chose to be paid the previous year's salary when in fact they did not know that by not signing the individual contracts they would be denied the benefits of the base salary increases, and were informed that the signing of individual contracts might not even be necessary. The *Davis* court also found it "basically unfair" to give the unsigned teachers the benefit of the salary increase when, by their refusal to sign, they were not bound by the terms and conditions imposed upon those teachers who opted to sign the individual contracts. We would agree if we were of the opinion that the unsigned teachers could reap the benefit of a salary increase without bearing the burden of the conditions and terms contained in the agreement reached by the teacher representatives and the school board. Such is not the case here. The plaintiffs in this case performed all duties that were required of them by the school board. During the 1975-1976 school year, the plaintiffs worked the same number of days as those tenured teachers who signed individual contracts, participated in all required supervisory duties, and attended all necessary functions such as teachers' institutes and open houses. We find, as did the fifth district in *Littrell*, that to deny the plaintiffs their base salary increases solely on the grounds that they refused to sign individual contracts is arbitrary, unreasonable, and capricious, and the circuit court was correct in entering judgment for the plaintiffs.

Although a number of other issues have been raised by both the plaintiffs and the defendant school board, discussion of these other issues is rendered unnecessary by our reliance upon *Littrell* in resolving this case.

The judgment of the Circuit Court of La Salle County is affirmed.

Judgment affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STENGEL, dissenting:

I must respectfully dissent. In their complaint plaintiffs allege that they were each given a reduction in salary for 1975-76 which was arbitrary and capricious and not based upon any reasonable classification. Plaintiffs also allege that their salaries were computed on a base salary of

$8,500, adjusted upward by "an index figure." Thus, in fact, each plaintiff received an actual *increase* in salary for 1975-76, not a reduction as claimed. Since section 24—11 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—11) applies where the salary of a tenured teacher is *reduced*, and in no other situation, I am compelled to conclude that plaintiffs are not entitled to the relief sought.

In my judgment, the decision in *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, 312 N.E.2d 335, is more persuasive than the view of ·the majority. In *Davis*, the court observed that the board gave all teachers the option of receiving increased benefits by signing the new contract. When the plaintiffs opted not to sign, and as a result received less pay than those who did sign, the court held that this salary distinction was not arbitrary, capricious, or unreasonable. The court went on to say:

> "Parenthetically, we note that it would be basically unfair to apply the benefits of the new contract to those who refused to sign when they, by refusing, declined to obligate themselves to the terms and conditions imposed upon those who did sign." 19 Ill. App. 3d 644, 646, 312 N.E.2d 335, 336.

Accordingly, I would reverse the judgment of the trial court.